**UNITED STATES of America,**

v.

**Stanley LANE and Joseph Valle, Defendants.**

United States District Court
S. D. New York.
June 16, 1964.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for United States, James M. Brachman, Asst. U. S. Atty., of counsel.

Spar, Schlem & Burroughs, New York City, for defendants, Charles Spar, Leon B. Savetsky, New York City, of counsel.

FEINBERG, District Judge.

Defendants Lane and Valle move for the suppression and return of three bars of gold seized on May 23, 1962, in the apartment of Lane's sister at 450 West 24 Street, Manhattan. Defendants were subsequently indicted for unlawfully acquiring and possessing gold bullion and conspiring to violate provisions of the law regulating the acquisition and holding of gold, in violation of 12 U.S.C. § 95(a) and 18 U.S.C. § 371. The government concedes that the search and seizure took place without either a search warrant or an arrest warrant.

On May 23, 1962, at about 1 P.M., Treasury Agents Wong and Vecchione, posing as gold buyers, met defendants Lane and Valle and discussed a sale of gold. Lane told Agent Wong that he had 15,000 ounces of gold in Arizona and 200 ounces of gold in New York, the price for which was $45 an ounce. There was some dickering as to whether defendants could actually produce any gold,

and Lane had Valle get and exhibit a sample gold bar. Defendant Lane then asked Agent Wong to bring the money to the apartment of Mrs. Ruth Shack, Lane's sister. The agent refused to bring money to an unknown apartment and suggested that the transfer take place in a hotel room. Lane, seeking to induce the agent to use the apartment for the transfer, volunteered to take Agent Wong to the apartment so that he could look around. After looking over the apartment for two or three minutes, Agent Wong agreed, after calling his superiors, to use the apartment for the transfer. The agents then stated that they would return later and meet defendants in order to consummate the transaction.

Thereafter, Agent Wong made arrangements with Agent Horace J. Gibbs and the city police to keep the proposed meeting under surveillance and to effect an arrest if it turned out that defendants actually did possess gold. The arrangements Agent Wong made with Agent Gibbs included a pre-arranged signal for Gibbs to arrest defendants should the presence of gold be verified.

At 4 P.M., Agents Wong and Vecchione met and talked with defendants on the street. Thereafter, they all went to the apartment of defendant's sister. Defendants Lane and Valle exhibited three gold bars in the apartment to Agent Wong, who took the bars into another room and tested them with a field test to see if they were gold. Upon being satisfied they were gold, Agent Vecchione left with defendant Valle under the pretense he was going to get the money. Once they were outside, Agent Gibbs, upon being signalled, arrested Valle. Thereafter, Vecchione, Gibbs, and a detective from the New York City Police Department went upstairs to the apartment. Vecchione knocked on the door, but did not say anything. Defendant Lane opened the door and Gibbs entered and announced that everyone was under arrest, pretending to arrest Agents Wong and Vecchione as well. The three gold bars were lying on a couch in plain view when Gibbs entered and were seized by him.

In support of their motion to suppress, defendants argue that the search and seizure, which the government claims were proper as incidental to a lawful arrest, were unlawful because (1) the seizure was a product of a deceptive entry in violation of the Fourth Amendment; (2) the arrest was purposely delayed so that a search and seizure at the apartment could be had; (3) the entry into the apartment was itself illegal; and (4) the arrest was a subterfuge for a search. The government denies each of these contentions.

Defendants argue that the three gold bars found in the apartment should be suppressed because Agents Wong and Vecchione initially gained entrance into the apartment by disguising their identities. Principal reliance is placed on the following cases: Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921); Fraternal Order of Eagles, No. 778, Johnstown, Pa. v. United States, 57 F.2d 93 (3 Cir. 1932); United States v. Mitchneck, 2 F.Supp. 225 (M.D.Pa. 1933); United States v. Reckis, 119 F. Supp. 687 (D.Mass.1954). In Gouled, the Court held that there was a violation of the Fourth Amendment when a government employee, who had been posing as a friend of defendant, surreptitiously took from defendant's office a document while the employee was visiting defendant. In Olmstead v. United States, 277 U.S. 438, 463, 48 S.Ct. 564, 72 L.Ed. 944 (1928), Gouled was limited to its facts. In Fraternal Order of Eagles, No. 778, government agents gained entrance to a lodge hall by showing false membership cards, which had been secretly taken from other lodges, and on the basis of what they saw inside later obtained a search warrant. In Mitchneck, government agents were admitted to defendant's home on the representation that they were refrigerator salesmen and had mutual acquaintances. In Reckis, government agents entered upon defendant's land and misrepresented that they were sent by the boss to fix the still. In each

case, the courts held that the subsequent search and seizure were illegal since the initial entrance was through misrepresentation.

■ The facts in the above cases are entirely different from here. The search and seizure in Gouled were entirely secret, made without a warrant of any kind, and not incidental to an arrest, and in Eagles, Mitchneck and Reckis, the initial entry was at the initiative of a government agent. Compare United States v. Bush, 283 F.2d 51 (6 Cir. 1960), cert. denied, 364 U.S. 942, 81 S.Ct. 461, 5 L.Ed.2d 373 (1961). Here, Agent Wong initially refused to go to the apartment, but he and Agent Vecchione did so only after he was induced by defendants to use the apartment. Where government agents enter an apartment upon the express invitation and insistence of a defendant, there is no violation of the Fourth Amendment. In Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), a government employee, carrying a concealed microphone, entered defendant's place of business at his invitation so that defendant could offer him a bribe. The Court upheld the admissibility of both the testimony of the agent and recordings of the conversation, since the agent "was not guilty of an unlawful invasion of * * * [defendant's] office simply because his apparent willingness to accept a bribe was not real." 373 U.S. at 438, 83 S.Ct. at 1387. Accord, United States v. Beno, No. 28796, 2 Cir., May 28, 1964. Entry on invitation of defendant was approved by the Court in Lopez, even though the government employee was playing a double role.[1]

■ Defendants further contend that the arrest was delayed so that a search and seizure of gold could be had at the apartment. It is defendants' position that the arrest should have been made when probable cause was first apparent earlier in the day when the one bar of gold was exhibited to Agent Wong. However, delay in making an arrest is not ordinarily fatal to its validity. Officers can put off making an arrest in the hope of strengthening the case or of identifying confederates. United States v. Holiday, 319 F.2d 775 (2 Cir. 1963); Carlo v. United States, 286 F.2d 841, 846 (2 Cir.), cert. denied, 366 U.S. 944, 81 S. Ct. 1672, 6 L.Ed.2d 855 (1961). In the present case, the agents had legitimate reason to put off making the arrest. When the first gold bar was exhibited to Agent Wong, he could not be positive that the bar was actually gold, rather than gold plated, and that the defendants were not using the bar as a subterfuge to rob him of his money. Further, the agents were justified in delaying the arrest so as to ferret out any confederates in the scheme.

■ Defendants claim that the manner of entry into the apartment by the arresting officers invalidates the arrest and search and seizure incidental thereto. Mrs. Shack, Lane's sister, was the only witness called by defendants to testify to the manner of entry. She testified that defendant Lane went to the door in response to a knock, opened the door three or four inches, and that the agents then thrust open the door with force and pinned Lane against the wall. Mrs. Shack testified that although the agents were repeatedly asked to identify themselves, they did not do so until after the commencement of the search. See Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). According to the agents who testified, upon hearing the knock on the door, Lane commented that it "must be the boys back with the money," thinking Valle and Vecchione had returned from downstairs. Lane went to the door and opened it without making any inquiry as to who was on the other side. Vecchione walked in, followed by Agent Gibbs and a New York City detective. Agent Gibbs identified him-

1. The dissent in Lopez does not find any violation of the Fourth Amendment by a government employee who enters a constitutionally protected area while concealing his identity. 373 U.S. at 465, 83 S.Ct. 1381.

self while walking through the door and placed everyone in the room under arrest. The agents deny that the door was open only three or four inches and that they forced the door open pinning Lane to the wall. Defendants argue that under 18 U.S.C. § 3109, before agents can break into a house, they must announce their authority and purpose. Miller v. United States, supra, 357 U.S. at 306, 78 S.Ct. 1190; United States v. Mullin, 329 F.2d 295, 298 (4 Cir. 1964); Gatewood v. United States, 93 U.S.App.D.C. 226, 209 F.2d 789 (1953). However, these requirements do not apply where there is permissive entry. See Keiningham v. United States, 109 U.S.App.D.C. 272, 287 F.2d 126, 130 (1960); cf. Hopper v. United States, 267 F.2d 904 (9 Cir. 1959). Where defendant opens the door and the agents enter, there is no forcible entry. United States v. Garnes, 258 F.2d 530 (2 Cir. 1958) and oral opinion of Judge Dawson, Appendix to Appellee's Brief, pp. 52a–53a, cert. denied, 359 U.S. 937, 79 S.Ct. 651, 3 L.Ed.2d 637 (1959); United States v. Lewis, 171 F.Supp. 71, 72 n. 3 (D.D.C.), aff'd in part, rev'd in part sub nom. Davis v. United States, 107 U.S.App.D.C. 76, 274 F.2d 585 (1959), cert. denied, Ellis v. United States, 363 U.S. 806, 80 S.Ct. 1241, 4 L.Ed.2d 1149 (1960); see United States ex rel. Turco v. Dross, 224 F.Supp. 142 (S.D.N.Y. 1963). Under the circumstances, I accept the testimony of the agents that the entry was permissive. I find that defendant Lane opened the door, thinking that Vecchione had returned with the money, the agents were allowed to walk in, and Agent Gibbs identified himself while crossing the threshold.[2]

 Finally, defendants contend that the arrest was a subterfuge for a search because the agents were under instructions not to arrest unless Agent Wong saw gold in the apartment. Under all the circumstances, I cannot find that this was a subterfuge for a search, see McKnight v. United States, 87 U.S.App.D.C. 151, 183 F.2d 977 (1950), but rather the plan was a means of verifying that a crime was, in fact, being committed.

From all of the above,[3] I find that a reasonable search was made incident to a lawful arrest, which was based upon probable cause, and that defendants' arguments are without merit.[4]

Accordingly, defendants' motion is denied. So ordered.

2. In reaching this conclusion, I have not examined and do not consider in any way the grand jury testimony of Mrs. Shack.

3. Defendant Valle also argues that the gold should be suppressed as to him because he was arrested before the gold was seized and, therefore, the search and seizure of it could not be incidental to his arrest. However, in view of my disposition of the motion, the gold bars can in no event be returned, and it would seem

that defendant Valle's contention is better left to the trial judge who can rule on the admissibility of the gold against a co-conspirator. Cf. United States v. Williams, 328 F.2d 887 (2 Cir. 1964).

4. It is, therefore, unnecessary to deal with the government's argument that there was no search at all because the gold bars were in full view when the agents entered (Tr. p. 109).