**UNITED STATES of America,
Appellee,**

v.

**Frank COSTELLO, Appellant.**

**No. 527, Docket 30558.**

United States Court of Appeals
Second Circuit.

Argued June 27, 1967.

Decided July 17, 1967.

Joshua N. Koplovitz, New York City (Anthony F. Marra, New York City, on the brief), for appellant.

John A. Stichter, Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty., and Michael W. Mitchell, Asst. U. S. Atty., on the brief), for appellee.

Before WATERMAN and SMITH, Circuit Judges, and LEVET,* District Judge.

J. JOSEPH SMITH, Circuit Judge:

Frank Costello appeals from a judgment of conviction in the United States District Court for the Southern District of New York, William B. Herlands, Judge, sitting with a jury. Appellant was convicted for selling heroin on June 29, 1963, for concealing heroin on October 29, 1963 and for conspiring to violate the federal narcotic laws from May 1 to November 8, 1963. He was tried with a codefendant, John Oliveri, who was convicted for selling heroin on May 22 and May 29, 1963 and conspiracy. This court affirmed Oliveri's conviction without opinion on June 9, 1965. Appellant received concurrent six year sentences on the three counts. We find no error and affirm the judgment.

Narcotics agents had learned that Oliveri was selling narcotics at his shop, the Don Juan Cleaners, in the Bronx. Agent Coursey, through an informant, one Jimmy Butts, met Oliveri in April 1963. On May 20 Oliveri agreed to sell heroin to Coursey. On May 22, by agreement, Coursey brought into the cleaners a sport jacket to be pressed, with cash for the heroin in the pocket. He later returned and picked up the jacket, with the agreed-upon package of heroin in the pocket. Surveillance of Oliveri was

* Of the Southern District of New York, sitting by designation.

instituted to learn of his source of supply. On June 29, 1963 Oliveri agreed to sell Coursey a quarter kilogram of heroin of good quality ("a 4 to 1 cut") for $4500. Oliveri was thereafter observed to enter and ride in a 1962 Chevrolet with appellant Frank Costello and to leave the car and proceed to the cleaners carrying a small brown paper bag. The transfer of the money and heroin was accomplished in a manner similar to the earlier transaction. After the transfer Oliveri left the cleaners carrying a different, larger paper bag, which he delivered to appellant in the Chevrolet. The car was registered in the name of the wife of Vincent Costello, appellant's brother. At first the agents believed that the supplier, the person seen in the car, was Vincent, husband of the registered owner, but later were satisfied that it was Frank, the appellant.

On October 28, 1963, Coursey attempted to arrange another transaction with Oliveri, having had Vincent Costello and appellant under surveillance by agents and Suffolk County police intermittently during the interval. Appellant had left his wife and moved in with a woman in an apartment at Huntington Station, Long Island. He had left his job at the Post Office in New York, giving ill health as the reason. He had grown a beard and had abandoned his usual haunts, staying close to the Huntington Station address. When Coursey came into the Don Juan Cleaners, Oliveri said he didn't know Coursey and asked him to leave. The agents then determined to arrest Oliveri and appellant, and on the next day picked both up at about the same time, about 8:00 p. m. The agents who picked up appellant at his residence at Huntington Station, Long Island, were accompanied by Suffolk County police, who had earlier obtained a state search warrant which was concededly invalid and was not used. Agent Bailey knocked on the door of Costello's apartment and when Costello opened the door and in response to Bailey's question identified himself, Bailey placed him under arrest and searched the apartment.

He found in a bedroom closet a skate case containing two kilograms of heroin as well as narcotic paraphernalia and ingredients used to mix, adulterate and package heroin. Costello first denied that the stuff belonged to him, but when Bailey suggested it belonged to Costello's paramour, Costello said it was his and that he had obtained it in June from a man named Nick at Fordham Road in the Bronx.

A motion to suppress the evidence seized on October 29 was denied by Judge Herlands prior to trial.

 Appellant's first and principal point is that the heroin which was the basis for the October 29 concealment charge was seized in violation of his Fourth Amendment rights. Appellant's argument is that the primary purpose of the officers who arrested him was to conduct a search and that the officers had adequate time to secure a warrant but failed to do so. Appellant's first obstacle is that, although he did raise objections to the search, he did not make these precise points below. United States v. Gitlitz, 368 F.2d 501, 503–504 (2d Cir. 1966), cert. denied 87 S.Ct. 1492, 18 L.Ed.2d 602; United States v. Indiviglio, 352 F.2d 276, 279 (2d Cir. 1965), cert. denied 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). His second obstacle is the rule that a defendant may not complain of error on one count when he receives concurrent sentences on several counts. Lawn v. United States, 355 U.S. 339, 359, 362, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). In United States v. Gonzalez, 379 F.2d 284 (2d Cir. June 22, 1967), the rule was applied where minimum mandatory sentences were imposed. The sentences imposed for the internal revenue violations in *Lawn*, however, do not seem to have been mandatory minimum sentences. Moreover, appellant's first point is not sustainable on its merits. The arrest was clearly valid as supported by probable cause and the mere fact that it was followed by a search does not compel the inference that the primary purpose of the arrest was to permit an otherwise unauthorized search.

United States v. Robinson, 325 F.2d 391, 395 (2d Cir. 1963). The 26-day delay in arrest is one of the factors in determining whether the arrest was a mere pretext for the search. Carlo v. United States, 286 F.2d 841, 846 (2d Cir.), cert. denied 366 U.S. 944, 81 S.Ct. 1672, 6 L. Ed.2d 855 (1961). Here, the delay seems justified by the confusion as to the identity of Oliveri's (the seller's) supplier, and the quest for more evidence both against appellant and other possible confederates, and there is no indication, as in McKnight v. United States, 87 U.S. App.D.C. 151, 183 F.2d 977 (1950), that the delay was deliberately arranged to permit a search of particular premises, or even that the arresting officers knew for certain that appellant was on those premises when the arrest thereon was undertaken. See United States v. Cally, 259 F.Supp. 539, 541–542 (S.D.N.Y. 1966). There were conversations among the state and federal officers expressing their anticipation that heroin and federal funds might be in appellant's apartment. These, however, do not necessarily prove that the arrest was primarily motivated by a desire to search; they are equally relevant to establish probable cause for arrest and as an indication that arrest was timely as the essential proof was probably available. And the haste shown by the failure to procure a federal warrant (although, as we have indicated, a state search warrant was obtained by state officers and was never used) to arrest is perfectly consistent with the previous justification for delay (to establish a case) because Oliveri had indicated some awareness of the participating agent's identity by refusing to deal with him the day before the arrest. Additionally, whether or not there was time to obtain a warrant is not controlling, for, carrying out the Congressional intent, this court has held that in narcotics cases federal narcotic agents have broad discretion in arresting and in connection therewith conducting a reasonable search so long as probable cause does in fact exist, as is here conceded. United States v. Santiago, 327 F.2d 573, 574–575 (2d Cir.

1964); United States v. McMillan, 368 F.2d 810, 812 (2d Cir. 1966), cert. denied 386 U.S. 909, 87 S.Ct. 856, 17 L.Ed.2d 783 (1967). See The Narcotics Control Act of 1956, 70 Stat. 570 (1956), 26 U.S.C. § 7607; United States v. Rabinowitz, 339 U.S. 56, 65–66, 70 S.Ct. 430, 94 L.Ed. 653 (1950); United States v. Francolino, 367 F.2d 1013, 1017–1018 (2d Cir. 1966), cert. denied 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967).

Appellant's second point is that there was a prejudicial variance between pleading and proof. The indictment charged concealment of heroin on October 29, 1963 in the Southern District and the bill of particulars alleged commission of the crime at approximately 8:00 p. m. at 67 East 2d Street, Huntington, Long Island. The proof showed concealment on Long Island and purchase in the Bronx in June and transportation to Huntington Station in September. Appellant has no standing to object; not only did he receive concurrent sentences but also he did not claim surprise below or request a continuance. Compare United States v. Glaze, 313 F.2d 757, 759–760 (2d Cir. 1963).

Appellant next argues that the United States Attorney abused his discretion in setting venue for the October 29 count in the Southern District. Appellant argues that the count alleged an offense in the Eastern District, that his residence was in that district and that he was prejudiced because without this count all the government had was a "mediocre constructive possession case" against which "appellant might very well have swung the pendulum in his favor by taking the stand in his own behalf." This point also was waived because of failure to object below, and in any case, it lacks substance. The possession in the Bronx made the venue proper. 18 U.S.C. § 3237(a).

The court has reviewed the sealed exhibits for identification and finds no error in the ruling denying their production under the Jencks Act, 18 U.S.C. § 3500.

Judgment affirmed.