UNITED STATES of America

v.

Christian Maria ROUSSEL
aka Abraham Muicey.

Crim. A. No. 67–354.

United States District Court
D. Massachusetts.

Feb. 5, 1968.

Paul F. Markham, U. S. Atty., Albert F. Cullen, Jr., Asst. U. S. Atty., Dept. of Justice, Boston, Mass., for the Government.

Karnig Boyajian, Boston, Mass., Court-appointed for defendant.

## MEMORANDUM

MURRAY, District Judge.

The indictment here charges that defendant on or about December 11, 1967 fraudulently and knowingly did import and bring into the United States at Boston, Massachusetts, a narcotic drug, namely, heroin, in violation of 21 U.S.C. § 174. The case came on to be heard on defendant's motion to suppress five clear plastic bags or envelopes taken from the defendant supposed to contain heroin. Defendant contends the seizure of the bags and contents violated his rights under the Fourth Amendment to the Federal Constitution. I find the following facts.

1. Defendant arrived on Flight 019 Air France from Paris, France, at Logan Airport, Boston, on December 11, 1967, about 2:47 P.M. After deplaning, he entered the United States Customs area at the airport and proceeded to follow the procedure outlined by customs officials. Shortly after entering the area, he attracted the attention of one Killeen, a customs port investigator in plain clothes, who thought defendant's gait and posture were unusual and kept defendant under observation until he had completed the customs procedure and was about to leave the customs area. Killeen then requested defendant to accompany him to the private search room. While Killeen was observing defendant, he communicated to one Christopher, also a customs port investigator in plain clothes, his suspicions that defendant had something concealed on his body. Thereupon, Christopher observed defendant as he helped defendant retrieve his suitcase from a baggage carousel and as defendant carried the suitcase to and through the baggage inspection line. Christopher also suspected defendant was concealing something on his body under his outer coat. Each of the inspectors noticed an unusual bulge under the back of defendant's outer coat when he inclined his body either in an effort to retrieve his suitcase from the carousel, or in grasping it and carrying it to the baggage inspection line, and also noticed an

unusual stiffness in his gait and posture as he walked about the customs area. When Killeen requested defendant to accompany him to the private search room, Christopher went to the inspection area to get defendant's customs declaration.

2. In the search room defendant removed his outer coat, suit jacket and shirt at Killeen's request. It was then revealed that defendant was carrying several plastic bags or envelopes containing a white powdered substance suspended from surgical tape which surrounded and adhered to his upper torso. The bags were at his back. After observing the plastic bags, and being informed by defendant that he wished to talk with someone in French or Spanish, Killeen arranged with his supervisor Gustafson to call the customs agents in Boston. Following that telephone call, customs agent Grant appeared within a half hour.

3. Grant saw defendant sitting in a chair in the search room, with his shirt removed, and the plastic bags containing the white powder hanging from the surgical tape adhering to his body. Grant examined the passport which defendant had handed to Killeen, the customs declaration which Christopher had secured, and other papers taken from defendant in the search room. These included airplane tickets, health certificates, police identification certificate, and a blood group certificate. There was a photograph on the passport and one on the police identification certificate. These appeared to bear strong resemblance to defendant. The passport was issued by the Argentine Republic to one "Abraham Muicey" and the police identification certificate, to "Christian Maria Roussel." The declaration contained no reference to the plastic bags. Grant removed a sample of the powdered substance from one of the bags, subjected the sample to a field test for heroin, and concluded from the results that the sub-

stance was in fact heroin. Grant then arrested the defendant for unlawful importation of heroin.

Upon the basis of the foregoing findings, the question is whether the bags and contents should be excluded from evidence at the trial of the indictment on the grounds that seizure of them violated Fourth Amendment standards as to reasonableness of the search. Defendant contends the seizure here was unreasonable and cannot be justified because (a) the search took place before the arrest, (b) there was no probable cause to arrest defendant at the time he was searched, and (c) the conduct of the customs agents at the time of the search must be judged as if it were the ordinary case of a search conducted by police officers. The United States counters the defendant's contention by asserting that all that need be shown in this case is that there were suspicious circumstances involving defendant which justified the search by customs inspectors for purposes of customs laws enforcement. The assertion is also made that this case falls within the exception to the ordinary rule that a search without a warrant must be adjudged unreasonable unless it is shown to be incidental to an arrest made upon probable cause.

■■ I find that the customs inspectors and agent were acting in the course of their duties under 19 U.S.C. §§ 482, 1581, and 19 C.F.R. § 23.1(d) (1967)[1], in conducting the search and seizing the plastic bags and their contents. Section 482, in its pertinent parts, provides that

"Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any * * * person, on * * * whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, * * * and to search any

---

1. 19 C.F.R. § 23.1(d) (1967). "A customs officer * * * may stop, search, and examine any * * * person within the limits of the United States * * * on whom he may have reasonable cause to believe there is merchandise subject to duty or which has been introduced into the United States contrary to law."

* * * envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such * * * person, or in any such * * * envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, * * * or otherwise, he shall seize and secure the same for trial."

Killeen and Christopher reasonably suspected that defendant was concealing on his body some object or material which he did not intend to exhibit to customs officials. Their suspicions were strengthened when examination of the customs declaration disclosed no reference to things or objects other than the handbag and suitcase which defendant carried openly in plain view. Killeen was acting to enforce the customs laws when he requested defendant to accompany him to the private search room. Not knowing whether defendant had anything concealed on his body Killeen concluded that only a search of defendant would establish whether defendant was in fact attempting to bring property into the United States unlawfully. Defendant partially disrobed himself, not voluntarily, but faced with the coercive circumstances of a request made by a customs official apparently vested with governmental authority. Killeen used no force against defendant to accomplish the disrobing, nor did he, in the privacy of the search room, subject defendant to any indignities. Indeed, no charges against Killeen or Christopher, or any other customs agent, are made on that score. Inasmuch as the powdered substance could not be identified by visual inspection, Grant took appropriate means to discover what it was by puncturing one of the plastic bags and removing part of the contents. Grant was satisfied that defendant had brought heroin into the United States in violation of the laws

thereof. The arrest of the defendant which followed thereupon was incidental to the search made of him in the enforcement of the customs laws. It is the burden of the Government to establish the legality of the search and seizure. I rule that the search was reasonable and the seizure of the plastic bags and contents was lawful.

The authority of customs officers to search persons in the course of their duties under 19 U.S.C. §§ 482, 1581, for contraband property unlawfully imported or brought into the United States, is limited by the proscription against "unreasonable" searches of the Fourth Amendment. A constitutionally valid search by customs officers of a person entering the United States from a foreign country stands, however, upon a different footing than searches generally. "Judicial recognition of this distinction has given rise to the term 'border search', in order to distinguish official searches which are reasonable because made solely in the enforcement of Customs laws from other official searches made in connection with general law enforcement. Validity for this distinction is found in the fact that the primordial purpose of a search by Customs officers is not to apprehend persons, but to seize contraband property unlawfully imported or brought into the United States." Alexander v. United States, 362 F.2d 379, 381–382 (9th Cir. 1966), cert. denied, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966). Accord, Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Morales v. United States, 378 F.2d 187 (5th Cir. 1967); Murgia v. United States, 285 F.2d 14 (9th Cir. 1960), cert. denied, 366 U.S. 977, 81 S.Ct. 1946, 6 L.Ed.2d 1265 (1961); King v. United States, 258 F.2d 754 (5th Cir. 1958), cert. denied, 359 U.S. 939, 79 S.Ct. 652, 3 L.Ed.2d 639 (1959). It is not a prerequisite to a border search that the customs officers have probable cause to believe the person searched is committing a crime. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Mere suspicion alone that contraband property is

being brought into the United States is sufficient to justify a border search for the purpose of enforcing the customs laws. Cervantes v. United States, 263 F.2d 800 (9th Cir. 1959). That defendant was required to disrobe partially so that the customs officials could determine whether he was carrying property concealed on his person was not an unreasonable request, and did not invalidate the search. Witt v. United States, 287 F.2d 389 (9th Cir. 1961), cert. denied, 366 U.S. 950, 81 S.Ct. 1904, 6 L.Ed. 2d 1242 (1961). Compare Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In the instant case the conduct of the customs officers in relation to the defendant all took place within the ambit of the customs area. Accordingly, there is no merit to the defendant's contention that the time, place and circumstances of the search require a finding that the search was unreasonable as it was not incidental to an arrest upon probable cause. See Cervantes v. United States, supra.

The motion to suppress is denied.