**UNITED STATES of America,**
**Plaintiff,**

v.

**Morris SOHNEN, Defendant.**

**No. 68–CR–233.**

United States District Court
E. D. New York.

March 10, 1969.

Vincent T. McCarthy, U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y., for plaintiff; Denis E. Dillon, Asst. U. S., Atty., of counsel.

Benjamin Lebenbaum, New York City, for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

The defendant is charged in a three-count indictment with knowingly and willfully acquiring and possessing gold coins without a license (12 U.S.C. § 95a) and concealing and facilitating the transportation and concealment of gold coins with knowledge that they had been illegally imported into the United States (18 U.S.C. § 545). Evidence was obtained through pre-delivery inspection at New York City customs headquarters of defendant's mail from abroad and a search of his apartment at the time of his arrest.

The legality of the search and inspection has been challenged by a pre-trial suppression motion pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure. The government concedes that it had no warrants and that the mail was opened in violation of postal

regulations. For the reasons noted below, evidence obtained as a result of the search of the apartment is suppressed, but evidence resulting from opening defendant's mail may be introduced at the trial.

## FACTS

Customs Agent George F. Neilson, without obtaining a search warrant, opened a sealed package containing twelve gold coins which had been mailed to the defendant from Switzerland. The package had been referred to Neilson for examination by the Mail Entry Section of the Customs Department, a procedure which was followed whenever there was a suspicion that a package might contain dutiable or prohibited matter. In this instance, the weight and feel of the package were unusual and it did not bear a required label stating that it could be opened for customs inspection. 19 C.F.R. § 9.5(a); 39 C.F.R. §§ 221.4, 261.3(a). After a spectroscopic examination revealed that it contained twelve disc-shaped objects, each about the size of an American silver dollar, the package was opened.

This search of the defendant's mail—and the subsequent search described below—was contrary to postal regulations. They provide that "[i]f there is reason to believe that prohibited matter is contained in a sealed letter" a notice is to be sent "to the addressee requesting authorization to open the letter and examine its contents"; if authorization is not given the letter is to be returned "unopened, to its origin." 39 C.F.R. § 262.1. *See also* 39 C.F.R. §§ 261.1, 261.3(a). Whether customs regulations were also violated is not clear. *See* 19 C.F.R. §§ 9.5(b), 9.12(d).

When the opened package was found to contain gold coins, Neilson checked the "Fine Book," a customs record listing all notices requesting permission to open sent to addressees of foreign mail. He discovered that the defendant had recently been sent several packages from abroad addressed to three different New York City post office boxes. In each instance, the defendant had failed to give his consent to the opening of the package and it was returned to the sender.

On the basis of this information and after consultation with an Assistant United States Attorney, Neilson placed an alert on all foreign mail sent to the defendant and examined it prior to delivery. A watch was put on defendant's post office boxes and Neilson and other agents observed the defendant picking up his foreign mail on several occasions. Defendant was followed. Although he visted several coin dealers, he was never observed leaving anything behind.

Four weeks after opening the first package Neilson opened—again without a search warrant—another sealed package mailed to defendant from abroad. It contained fifteen gold coins. It was resealed and forwarded to the defendant's post office box where Neilson and two other agents waited. Fully observed, defendant, after picking up the package, met his wife about a block from the post office and drove off.

By the time Neilson and his fellow agents reached their own car, defendant was out of sight. The agents drove directly to defendant's home, and, as they pulled up they saw defendant and his wife entering their apartment house.

The agents immediately went to the defendant's apartment and, when the defendant came to the door, placed him under arrest and advised him of his constitutional rights. Neilson then told the defendant that they would search the entire apartment unless he revealed where his coins were kept. The defendant showed the agents a small room which, he said, he used as an office. He handed Neilson the package he had just picked up at the post office. The room was searched. Seized were a large quantity of gold coins and a looseleaf book containing records of gold coin transactions with foreign firms and receipts for sales of gold coins to domestic dealers. After completing their search, the agents left the defendant but took his gold and records.

## SEARCH OF DEFENDANT'S MAIL

The determination of whether an administrative search is "reasonable" within the meaning of the Fourth Amendment involves the striking of a balance between the government's need to know and to inspect in our complex, highly regulated society and the individual's right to the privacy of his person, thoughts and possessions. In the present case, we are faced with a conflict between the government's efforts to protect the nation without hindering the smooth flow of international mail and the individual's interest in the privacy of his mail. Based upon the analysis set out below, we think that the nature and conduct of the mail search in this case swings the balance against suppression.

A government has a well-recognized right to conduct customs searches of persons and merchandise as they enter the country. *See* Carroll v. United States, 267 U.S. 132, 149–154, 45 S.Ct. 280, 285, 69 L.Ed. 543, 39 A.L.R. 790 (1925) ("Travellers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in"); Boyd v. United States, 116 U.S. 616, 623, 6 S.Ct. 524, 528, 29 L.Ed. 746 (1886) ("the seizure of goods forfeited for a breach of the revenue laws, or concealed to avoid the duties payable on them, has been authorized by English statutes for at least two centuries and the like seizures have been authorized by our own revenue acts from the commencement of the government"). The special problems presented by the smuggler were not unknown to the founding fathers, some of whom engaged in the trade from financial as well as patriotic motives. What "was deemed an unreasonable search and seizure when it was adopted * * *" has a bearing on the construction of the Fourth Amendment. Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925).

Exercising this historical customs power, Congress has conferred, and the courts have recognized, broad authority in customs officials to conduct border searches without a warrant and without a showing of probable cause. *E. g.*, 19 U.S.C. § 1496 (examination of "baggage of any person arriving in the United States"); 19 U.S.C. § 482 (authority to conduct border searches of "any vehicle, beast, or person, on which or whom * * [customs officials] shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law * * *, and to search any trunk or envelope, wherever found, in which he [customs officer] may have reasonable cause to suspect there is merchandise which was imported contrary to law"); 19 U.S.C. § 1499 (opening and examination of packages containing merchandise); 19 U.S.C. § 1581(a) (authority of customs officials to board and search vessels and vehicles); 19 U.S.C. § 1582 (authority to search "all persons coming into the United States from foreign countries"); Thomas v. United States, 372 F.2d 252, 254 (5th Cir. 1967); Alexander v. United States, 362 F.2d 379 (9th Cir.), cert. denied, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966); United States v. Beckley, 335 F.2d 86 (6th Cir. 1964), cert. denied sub nom. Stone v. United States, 380 U.S. 922, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965); Landau v. United States Attorney For Southern District Of New York, 82 F.2d 285 (2d Cir.), cert. denied, 298 U.S. 665, 56 S.Ct. 747, 80 L.Ed. 1389 (1936); United States v. Roussel, 278 F.Supp. 908 (D. Mass.1968); Comment, Intrusive Border Searches—Is Judicial Control Desirable? 115 U.Pa.L.Rev. 276 (1966).

A quick and expeditious method of examining people and goods entering the country is essential if customs regulations and laws against smuggling are to be enforced without undue embarrassment and delay to travelers and without clogging mails and other conduits of goods from abroad. Our international treaties concerning mail require labels

authorizing opening for customs inspection and permit opening for inspection without "formality." Universal Postal Convention, July 11, 1952, Art. 61, 4 U. S. Treaties and Other International Agreements 1316 (1953). *See also* Constitution of the Universal Postal Union, July 10, 1964, Art. 117, 16 U.S. Treaties and Other International Agreements (Part 2) 1388 (1965).

■ Thus, although the Fourth Amendment's prohibition against unreasonable searches and seizures applies to searches of mail (*see, e. g.,* Ex Parte Jackson, 96 U.S. 727, 733, 24 L.Ed. 877 (1878); Lustiger v. United States, 386 F.2d 132, 139 (9th Cir. 1967) (dictum); Oliver v. United States, 239 F.2d 818, 61 A.L.R.2d 1273 (8th Cir.), cert. dism., 353 U.S. 952, 77 S.Ct. 865, 1 L.Ed.2d 858 (1957)), the "standards applicable to mail matter moving entirely within the country are not applicable to mail matter coming in from outside the country at least where it appears that a customs determination must be made." United States v. Beckley, 335 F.2d 86, 88 (6th Cir. 1964), cert. denied sub nom. Stone v. United States, 380 U.S. 922, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965). *See also* United States v. Collins, 349 F.2d 863, 868 (2d Cir. 1965), cert. denied, 383 U. S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303 (1966). For customs purposes, mail sorting rooms at a port of entry like New York can be treated as a border crossing.

■ The government's power to search international mail for customs purposes is not unlimited. The Constitution at least prevents harsh and demeaning searches on mere suspicion and it may well prevent the opening of letters, as opposed to packages containing merchandise, without a search warrant. Henderson v. United States, 390 F.2d 805 (9th Cir. 1967) (search of body cavities of female on mere suspicion as affront to dignity and privacy). *Cf.* Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L. Ed. 183, 25 A.L.R.2d 1396 (1952). *See also* Boyd v. United States, 116 U.S. 616, 623, 6 S.Ct. 524, 29 L.Ed. 746 (1886) (unreasonable search and "seizure of a man's books and papers" violates the Constitution); Ex Parte Jackson, 96 U. S. 727, 732, 24 L.Ed. 877 (1878). While the Fourth Amendment protects persons against unreasonable searches of their "effects" as well as their papers, its impact on searches of merchandise coming from abroad is limited by the government's customs power and the absence of any First Amendment interest.

■ In the instant case, constitutional limits were not exceeded by opening defendant's mail. The nature of the search minimized any impact on defendant's constitutional interests. Searched were packages from abroad which customs agents had ample grounds to suspect contained dutiable merchandise or contraband rather than private communications. The first package lacked the required label or endorsement, heft indicated the presence of some sort of heavy metal and spectroscopic examination revealed disc-shaped objects. The opening of this package, the examination of the Fine Book and the continuing pattern of incoming mail provided Agent Neilson with even greater cause for opening the package on the day of the arrest. Traditional expectations of importers with respect to customs searches would lead most of them to anticipate governmental inquisitiveness which might take far more demeaning form than did the opening of these two packages.

The defendant's person, home, office and channels of communicating his thoughts and ideas were left inviolate. The situation here is analogous to the inspection of inbound commercial shipments. The impact and restrictions of the Fourth Amendment on this category of searches are minimal.

■ Having concluded that the searches of defendant's mail were reasonable, we must consider whether this result should be altered because they were contrary to postal regulations. Exclusion of highly reliable and probative evidence

is a sanction to be used by the courts only when there is a grave danger to clearly defined national policy. See United States v. Beckley, 335 F.2d 86, 90 (6th Cir. 1964), cert. denied sub nom. Stone v. United States, 380 U.S. 922, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965) (delay of mail); United States v. Schwartz, 176 F.Supp. 613 (E.D.Pa.1959), aff'd on other grounds, 283 F.2d 107 (3d Cir. 1960), cert. denied, 364 U.S. 942, 81 S.Ct. 461, 5 L.Ed.2d 373 (1961); cf. Oliver v. United States, 239 F.2d 818 (8th Cir.), cert. dism., 353 U.S. 952, 77 S.Ct. 865, 1 L.Ed. 2d 858 (1957) (domestic mail). See also Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937) (violation of statute embodying national policy; held basis for suppression). It is not clear whether these postal regulations were designed merely to control internal procedures or whether they were also intended to protect addressees. Even if they were intended to protect recipients of mail from abroad, in light of the historical basis for customs searches discussed above, we cannot say that they rise to the level of national policy so as to require a *per se* rule of exclusion.

## SEARCH OF DEFENDANT'S HOME

▮ A warrantless search of premises under the immediate control of a person being lawfully arrested does not violate the Fourth Amendment, provided the search is an incident of the arrest and is not general or exploratory in scope. But when:

> " 'it appears * * * that the search and not the arrest was the real object of the officers in entering upon the premises and that the arrest was a pretext for or at the most an incident of the search,' the search is not reasonable within the meaning of the Constitution. Henderson v. United States, 4th Cir., 12 F.2d 528, 531, 51 A.L.R. 420." McKnight v. United States, 87 U.S.App.D.C. 151, 183 F.2d 977, 978 (1950).

See also, e, g., Jones v. United States, 357 U.S. 493, 500, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958) ("The testimony of the federal officers makes clear beyond dispute that their purpose in entering was to search for distilling equipment, and not to arrest petitioner"); United States v. Harris, 321 F.2d 739 (6th Cir. 1963); Government of Virgin Islands v. Rijos, 285 F.Supp. 126, 133 (D.V.Is. 1968); People v. Haven, 59 Cal.2d 713, 31 Cal.Rptr. 47, 381 P.2d 927, 931 (1963) (Traynor, J.); R. Davis, Federal Searches and Seizures 120–25 (1964). The motivation of the government agents is to be determined from the surrounding facts and circumstances.

▮ The probabilities favor the conclusion that the agents' primary purpose in entering defendant's apartment was to conduct a search rather than to make an arrest. *Cf.* United States v. Schipani, 289 F.Supp. 43, 54–60 (E.D. N.Y.1968) (burden of proof on motion to suppress); United States v. Kowal, 197 F.Supp. 401, 405 (D.R.I. 1961) (same). In determining motive, deliberate delay in making an arrest until the person to be arrested arrives at the premises to be searched is a persuasive factor. As the Court of Appeals for this circuit has declared:

> "* * * every time there is a delay in the making of the arrest and there is a search made as incidental to the arrest, the law enforcement officers take the risk that they will be charged with using the arrest as a mere pretext for the search." Carlo v. United States, 286 F.2d 841, 846 (2d Cir.), cert. denied, 366 U.S. 944, 81 S.Ct., 1672, 6 L.Ed.2d 855 (1961).

See also United States v. Costello, 381 F.2d 698, 701 (2d Cir. 1967) (delay in arrest one factor to be considered); McKnight v. United States, 87 U.S.App. D.C. 151, 183 F.2d 977 (1950) (rejection of "convenient present opportunity to make a lawful arrest in a public street"); United States v. Alberti, 120 F.Supp. 171 (S.D.N.Y.1954); R. Davis, Federal Searches and Seizures 123–25 (1964). *Cf.* United States v. Barbanell, 231 F. Supp. 200 (S.D.N.Y.1964) ("agents would have arrested defendant if they had seen him coming along the street").

Neilson testified that he decided to arrest the defendant when he observed him pick up and open the package containing the fifteen gold coins at the post office. Nevertheless, instead of making the arrest in the post office or on the adjacent sidewalk, as they could have, Neilson and his fellow agents drove straight to the defendant's home.

The Court does not accept Neilson's somewhat vague explanation that he planned to follow the defendant in one last attempt to determine what the defendant was doing with the coins, but lost sight of him when the defendant's wife came by and picked him up. *Cf.* United States v. Harris, 321 F.2d 739, 741 (6th Cir. 1963) ("The court is not bound to accept the purpose as stated by the agents as controlling").

The desire to identify the person or persons to whom the defendant was selling the coins and to build a stronger case provides an adequate explanation for the failure to arrest the defendant during the weeks, after a cloud of suspicion had settled over him, when he had been observed repeatedly picking up foreign mail containing what appeared to be gold coins. *See* United States v. Costello, 381 F.2d 698 (2d Cir. 1967). Justification for delay was no longer present on the afternoon of the arrest. Neilson had decided to arrest the defendant despite the fact that his efforts to learn the identity of the defendant's customers had thus far been unsuccessful; in addition, it is *highly probable* that he had concluded, on the basis of his investigation, that the defendant kept his coins in his home. Other factors which have been relied upon by courts to justify a delay in making an arrest, such as the need to "[verify] that a crime was, in fact, being committed" United States v. Lane, 230 F.Supp. 950, 953 (S.D.N.Y.1964), or the fear of "a car chase and a gun battle in the streets which would endanger human life" (Leahy v. United States, 272 F.2d 487, 491 (9th Cir. 1959), cert. dism., 364

U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961)), are not present in this case.

It is significant that near the beginning of the surveillance Neilson had consulted an Assistant United States Attorney with respect to the case; the intention to prosecute criminally seems to have been fixed for an appreciable length of time before the arrest. There was ample time as well as a basis for obtaining a search warrant days or weeks before the arrest. 15 U.S.C. § 1595. "[T]his factor, when added to all the other circumstances of the case, indicate[s] that the purpose of the arrest was to justify an exploratory search for evidence rather than to apprehend the petitioner." United States v. Stern, 225 F.Supp. 187, 189 (S.D.N.Y.1964).

The conclusion that the agents were mainly interested in conducting a search is buttressed by the facts "that immediately upon gaining admission to the premises they demanded the right to search," (Henderson v. United States, 12 F.2d 528, 530 (4th Cir. 1926); *see also* United States v. Kowal, 197 F.Supp. 401 (D.R.I.1961)), that they conducted a search even after the defendant handed them the package he had picked up at the post office, and that they failed to take the defendant into custody.

 The package the defendant handed over to the government agents at the time of his arrest stands on a different footing from other material obtained in the defendant's apartment. It had already been lawfully seized prior to its delivery to the defendant. Returning it to the mail and sending it on to the defendant does not provide a basis for suppression. *See* United States v. Beckley, 335 F.2d 82 (6th Cir. 1964), cert. denied sub nom. Stone v. United States, 380 U.S. 922, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965); United States v. Davis, 272 F.2d 149 (7th Cir. 1959). Moreover, this package could have been seized by the agents even if they had arrested the defendant at the post office. It thus can-

not be said that the arrest was delayed to enable the agents to search for it.

## CONCLUSION

All evidence obtained from the search of defendant's apartment is suppressed except the package already opened by the government on the day of arrest. Defendant's motion is, in all other respects, denied.

So ordered.