**UNITED STATES of America**

v.

**Stanley CAMING, Defendant.**

**No. 90 Cr. 0556 (SWK).**

United States District Court, S.D. New York.

Jan. 15, 1991.

**122**

Otto G. Obermaier, U.S. Atty., S.D.N.Y. by Steven M. Witzel, Asst. U.S. Atty., for U.S.

Cutner & Rathkopf by David A. Cutner, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

On August 27, 1990, defendant Stanley Caming was charged in a two-count indictment with structuring financial transactions in violation of Title 31 U.S.C. § 5324. Defendant now moves to suppress evidence seized from his automobile at the time of his arrest as well as a post-arrest statement made prior to advice of his *Miranda* rights. Defendant also moves for produc-

---

1. According to defendant's counsel, Arnold Marshel, the Club's owner, was also a target of the

tion of hand written notes of post-arrest statements.

## BACKGROUND

In February 1989, the Department of the Treasury, Internal Revenue Service ("IRS") commenced a year-long investigation of defendant's involvement in illegal money structuring transactions. The investigation involved review of voluminous financial records, interviews with bank officials and extensive surveillance of defendant. On March 30, 1990, a United States Magistrate issued a warrant for defendant's arrest. Special Agent Pinzino, the agent in charge of the investigation, arranged to arrest defendant on the morning of April 2, 1990. Affidavit of Stephen D. Pinzino, sworn to December 14, 1990 ("Pinzino Aff.") ¶ 5.

On April 2, at approximately 5:00 a.m., Special Agent Pinzino met IRS Special Agents Carroll, Cunningham and Bento outside defendant's apartment building on East 27th Street in Manhattan. For reasons of safety and out of consideration for the health of defendant's wife, whom the Agents had previously observed to appear frail and in poor health, the Agents decided to arrest the defendant as he exited his apartment building. *Id.* at ¶ 6.

After waiting three and one-half hours, the Agents had not observed defendant emerge from the building. At 8:30 a.m., the Agents checked the building's garage and discovered that defendant's car was not there. The Agents proceeded to a factory building on West 25th Street in Manhattan where they had previously observed defendant. They were unable to locate defendant or his car there.

The Agents then proceeded down the west side of Manhattan to the Paerdegat Athletic Club in Brooklyn, where they had observed defendant on numerous occasions. Arriving at the Club at 9:30 a.m., the Agents spotted defendant's car in the Club's parking lot. In order to avoid detection or arouse suspicion,[1] the Agents

investigation. *See* Affidavit of David A. Cutner, Esq., sworn to on November 30, 1990, at ¶ 3.

staked out positions on side streets outside the Club from which they could observe the Club's parking lot exit. *Id.* at ¶ 10. At approximately 10:30 a.m., the Agents observed defendant's car leaving the Club. After the car had travelled approximately 100 feet from the parking lot exit, the Agents blocked defendant's car with their own.

Three Agents exited their cars; Special Agent Bento, remained in his car. The Agents were all wearing jackets with large yellow letters and yellow badges emblazoned on the jackets, identifying them as United States Treasury Agents. Pinzino Aff. ¶ 12. Special Agent Pinzino approached defendant's car, "identified [himself] as an IRS agent, told defendant that [they] had a warrant for his arrest and ordered defendant out of his car." *Id.* Defendant stated "I'm dead," or "I'm a dead man." Affidavit of Stanley Caming, sworn to September 29, 1990 ("Caming Aff.") ¶ 5; Pinzino Aff. ¶ 13. Shortly thereafter, Special Agent Cunningham handcuffed defendant and advised him of his *Miranda* rights. Caming Aff. ¶ 6.

At the time of defendant's arrest, Special Agent Pinzino conducted a search of the interior of defendant's automobile and found on the front seat, in the glove compartment and inside the driver's side sun visor, the following documents:

- 4 Dreyfuss Fund customer receipts in the name of Jacqueline Gottleib
- Phone Message for Jacqueline Gottleib
- 2 Con Edison electricity bills for Bench–n–Gavel Restaurant
- Chemical Bank monthly statement for account of David Flanders
- Certified Mail receipt for Dr. Phillip Hodes
- Bill of Sale for a camcorder

- Receipt of delivery from Shephard's Distributor and Sales Corp to Key Sales
- Dreyfuss Fund customer receipt in the name of Mr. & Mrs. Gilbert
- Dreyfuss Fund customer receipt in the name of Mr. & Mrs. Shaw
- Various personal papers with numerical configurations, lists of things to do, and circle diagrams

Affidavit of David Cutner, Esq., sworn to on November 30, 1990, at ¶ 5. On the day following the arrest, Special Agent Pinzino conducted an inventory search of defendant's vehicle and recovered additional documents from under the passenger side floor mat and the car's trunk. Pinzino Aff. ¶ 16.

Defendant now moves, pursuant to Federal Rules of Criminal Procedure 12 and 41, to suppress the documentary evidence seized from his car at the time of his arrest and during the inventory search, as well as the post-arrest statement made prior to being advised of his *Miranda* rights.[2] Defendant also moves, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(A), for production of the Agents' handwritten notes of defendant's post-arrest statements.

## DISCUSSION

### I. *Motion to Suppress*

#### A. Search of Defendant's Vehicle

Defendant contends that the evidence seized from his automobile during and subsequent to his arrest must be suppressed since "[t]he agents used defendant's arrest as a pretext for [a] warrantless search, apparently hoping that it could be justified under the 'search incident to a lawful arrest' exception to the warrant requirement."

When a police officer has made a lawful custodial arrest of the occupant of an auto-

---

**2.** Initially, defendant did not request a hearing. By letter to the Court dated January 8, 1991, defendant requested an evidentiary hearing on his suppression motions. By letter dated January 9, 1991, the government opposed this request, asserting that defendant had not presented sufficient evidentiary facts to create material issues of fact requiring an evidentiary hearing.

Since the Court finds that the material facts are not in dispute, an evidentiary hearing is unnecessary. *See United States v. Evans,* 572 F.2d 455 (5th Cir.), *reh'g denied,* 576 F.2d 931, *cert. denied,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *United States v. Hickok,* 481 F.2d 377 (9th Cir.1973).

mobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the vehicle. *See New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *see also Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (lawful custodial arrest justifies contemporaneous warrantless search of immediately surrounding area). Where, however, it appears that the search and not the arrest was the real purpose in effecting a warrantless search of the premises, "and that the arrest was a pretext for or at most an incident of the search," the search is unreasonable under the Fourth Amendment. *United States v. Sohnen*, 298 F.Supp. 51, 56 (E.D.N.Y.1969) (quoting *Henderson v. United States*, 12 F.2d 528, 531 (4th Cir. 1926)); *see United States v. Lefkowitz*, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); *McKnight v. United States*, 183 F.2d 977, 978 (D.C.Cir.1950).

In *Sohnen*, relied upon by defendant, United States Customs agents were investigating a defendant in connection with the illegal importation and possession of gold coins without a license. After observing defendant collecting his foreign mail on several occasions, the defendant was observed picking up a package from his post office box. The Customs agents observed the defendant leave the post office and drive off. By the time the Customs agents reached their own car, defendant was out of sight. The Customs agents drove directly to the defendant's apartment, placed defendant under arrest and advised him of his constitutional rights. The Customs agents told the defendant that they would search the entire apartment unless he revealed where his coins were kept.

The defendant showed the Customs agents a small room and handed the Customs agents the package which he had just picked up from the post office. The Customs agents searched the room and seized a large quantity of gold coins, and records and receipts of gold coin transactions. Af-

ter completing the search, the agents left the defendant but took the coins and records. The agent who conducted the search of the defendant's apartment testified that he had decided to arrest the defendant when he observed the defendant pick up the package at the post office but explained that he "planned to follow the defendant in one last attempt to determine what the defendant was doing with the coins, but lost sight of him...." *Sohnen*, 298 F.Supp. at 57.

Considering all these circumstances, the court found that the purpose of the arrest was to conduct an exploratory search for evidence rather than to apprehend the petitioner. *Id.* The court rejected the agent's explanation that he had lost sight of the defendant, observing that the agent could have "made the arrest in the post office or on the adjacent sidewalk...." *Id.* In reaching its conclusion that the arrest was a pretext for the warrantless search, the court relied upon the Customs agents' immediate demand to search upon gaining entrance to the apartment, their proceeding to search even after the defendant handed over the package he had picked up at the post office and their failure to take the defendant into custody. *Id.*

The circumstances here are materially different from those present in *Sohnen*. Defendant presents no evidence that the Agents contrived to arrest defendant in his car so as to conduct a pretextual warrantless search of the vehicle. Here, the Agents surveilled defendant's Manhattan apartment building for three and one-half hours, from 5:00 a.m. to 8:30 a.m., in an attempt to arrest defendant as he exited the building.[3] Only when this attempt proved unsuccessful did the Agents search for defendant elsewhere, ultimately locating him at the Paerdegat Athletic Club. The Court therefore finds that the Agents contemplated neither an arrest of defendant in his car, nor a search of the car, when setting out to arrest him.

---

**3.** Evidence that the Agents waited until Monday, April 2, to arrest defendant based on a warrant issued during the late afternoon on the preceding Friday, does little toward establishing a

"pretextual" arrest. *See United States v. Barbanell*, 231 F.Supp. 200 (S.D.N.Y.1964) (weekendlong delay in executing arrest warrant not unreasonable).

The Agents staked out positions outside the athletic club and arrested defendant as he drove his car from the club's parking lot. Although the Agents concede having waited for defendant to enter his car and begin to drive away, the record indicates no improper purpose in doing so. Special Agent Pinzino stated that the Agents' motivation was "to avoid detection and not arouse suspicion." Pinzino Aff. ¶ 10.

In light of the circumstances of the arrest, which occurred between 10:00 a.m. and 10:30 a.m. on a business day, and defendant's statement that the Club's parking lot holds "about 150 cars," Caming Aff. ¶ 3, Special Agent Pinzino's explanation is entirely credible. Common sense dictates that on a morning during the work-week, a tennis club parking lot is not apt to be full since the majority of patrons would normally be engaged in their regular employment; more likely, such a lot would be closer to empty. The Court accordingly finds that since Arnold Marshel, the Club's owner, was apparently a target of the investigation, the Special Agents' decision not to stake out positions within the Club's parking lot, where their presence would likely be conspicuous, and to arrest defendant as he exited the Club's parking lot, indicates nothing more than Agents' sound exercise of judgment in the execution of an arrest warrant.

The record fails to suggest that the Agents, by deliberately waiting to arrest defendant as he exited the Club, improperly manipulated the situation in order to conduct a search of defendant's vehicle. Rather than present evidence indicating that the arrest was "pretextual" or merely "an incident of the search," so as to fall within the rationale of *Sohnen,* the record indicates that the Agents made a concerted effort to arrest defendant "in an open area ... alone, outside his apartment building." Pinzino Aff. ¶ 6. The circumstances thus fail to indicate that the arrest was a mere pretext for a search. *See United States v.*

*Barbanell,* 231 F.Supp. 200 (S.D.N.Y.1964) (testimony that agents would have arrested defendant as he walked down street indicated that delay in arrest was not pretext for search).

### B. The Inventory Search

Routine inventory searches of vehicles lawfully impounded by police are reasonable under the Fourth Amendment. *Florida v. Wells,* —— U.S. ——, ——, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990). The validity of such searches is not limited to situations where impoundment is pursuant to a forfeiture statute. *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976).

Defendant has not suggested any impropriety in the execution of the inventory search itself. He argues rather that since the initial search of his car was improper, the subsequent inventory search was also improper.[4] Accordingly, having conducted a lawful search of the vehicle incident to defendant's arrest, the Agents properly impounded defendant's vehicle and conducted a search of its contents. *Opperman,* 428 U.S. at 369, 96 S.Ct. at 3097.

### C. Post–Arrest Statement

■ Defendant moves for suppression of his post-arrest statement "I'm dead," made to the Agents immediately prior to their advising defendant of his *Miranda* rights. Defendant argues that the Agents' failure to advise him of the reasons for his arrest mandates suppression of the post-arrest statement. Defendant admits, however, that his statement was spontaneous and made immediately after the Agents advised that he was being placed under arrest, before the Agents had initiated any interrogation. *See* Caming Aff. ¶ 5. The record is clear that at the time of the statement, defendant understood that he had been placed under arrest. *Id.* None of the inherently compelling circumstances of sta-

---

4. Anticipating that the government would justify the inventory search on the ground that the vehicle was subject to forfeiture, defendant contends that his vehicle was subject neither to forfeiture nor to the subsequent inventory search. Defendant's Memorandum at 9–12. The government, however, raises no such forfeiture claim and the Court does not reach this argument.

tion-house interrogation were present and there is no evidence of coercion or deception. The Court finds that defendant's statement was voluntary and spontaneous. Accordingly, it shall not be suppressed. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Vigo,* 487 F.2d 295 (2d Cir.1973).

The Court rejects defendant's argument that the Agents' alleged failure to advise defendant of the reason for his arrest, in violation of IRS internal procedures,[5] mandates suppression. Defendant concedes that his statement was made not in response to custodial interrogation but was made spontaneously before the Agents had administered the *Miranda* warnings. The Agents' resulting inability to initiate or complete advice of the *Miranda* warnings is irrelevant to a determination of whether defendant's post-arrest statement should be suppressed. *See Miranda,* 384 U.S. at 444–45, 86 S.Ct. at 1612. The Court defers until the time of trial a determination of defendant's argument that the post-arrest statement in issue is irrelevant and unfairly prejudicial, and should therefore be excluded under Federal Rules of Evidence 402 and 403. *See* Fed.R.Crim.P. 12(e).

II. *Motion for Production of Handwritten Notes*

Defendant moves for the production of the Agents' handwritten notes which form the basis for a typewritten memorandum of arrest which has been turned over to defendant. The Federal Rules of Criminal Procedure provide, in relevant part:

"the government shall permit the defendant to inspect and copy ... the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent."

**5.** Internal Revenue Manual, Part IX—Criminal Investigation, Special Enforcement Procedure § 9443(2) provides:

When making an arrest, the special agent should announce his/her official identity to the person to be arrested, should display

Fed.R.Crim.P. 16(a)(1)(A). Here, the government has, at present, fully complied with Rule 16(a)(1)(A) by providing defendant with the typewritten memoranda of his statements prepared from the Agents' handwritten notes. *See United States v. Koskerides,* 877 F.2d 1129, 1133 (2d Cir. 1989); *United States v. Elusma,* 849 F.2d 76, 79 (2d Cir.1988), *cert. denied,* 489 U.S. 1097, 109 S.Ct. 1570, 103 L.Ed.2d 936 (1989). Defendant's request for an *in camera* viewing of the handwritten notes is premature as the case has yet to proceed to trial. *See* 18 U.S.C. § 3500; *Koskerides,* 877 F.2d at 1133–34; *United States v. Sanchez,* 635 F.2d 47, 64–65, n. 18 (2d Cir.1980).

### CONCLUSION

For the reasons set forth above, defendant's motions for suppression of physical evidence and a post-arrest statement, and for production of handwritten notes of defendant's post-arrest statement are denied.

SO ORDERED.

his/her badge or pocket commission where circumstances permit, should make known to the offender that he/she is being arrested, should inform the offender of the reason for such action, and should take control of the arrested person.