UNITED STATES of America,
Appellee,

v.

Lee SANTIAGO, Defendant-Appellant.

No. 276, Docket 28021.

United States Court of Appeals
Second Circuit.

Argued Jan. 17, 1964.

Decided Feb. 7, 1964.

Joseph I. Stone, New York City, for defendant-appellant.

Daniel R. Murdock, Asst. U. S. Atty. Southern District of New York, New York City (Robert M. Morgenthau, U. S. Atty., and Neal Hurwitz, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, Chief Judge, and SWAN and SMITH, Circuit Judges.

LUMBARD, Chief Judge.

Lee Santiago appeals from a judgment of conviction for receiving, concealing, and facilitating the transportation and concealment of illegally imported heroin, 21 U.S.C. §§ 173–174. The judgment was entered in the Southern District of New York after a two-day trial before Judge Cooper, sitting without a jury. During the hearing of a motion to suppress evidence allegedly obtained through an il-

legal search and seizure, trial was begun on the indictment and the parties stipulated that all evidence heard on the hearing would be adopted at trial.

The defendant raises two claims on appeal, first that the government failed to establish probable cause to support her arrest, which was made without a warrant, and second, that the district judge improperly failed to direct the government to disclose the identity of an informant, whose information led ultimately to her arrest.

A brief survey of the essential facts leading to the arrest of the defendant shows that her claims are without merit. In early April 1962 Narcotics Agent Panella was told by an informer that the defendant and another woman were selling narcotics along upper Broadway in Manhattan. The informer described the two women as well as the defendant's Oldsmobile car. Subsequently, this information was corroborated by several other informers who had been found in the past to be reliable.

Agents Panella and Cockerill thereafter searched the records of the New York City Police Department and the Federal Bureau of Narcotics, which revealed defendant's two prior state narcotics convictions and one arrest in January 1962 by state enforcement officers for possession of narcotics with intent to sell. Between April 10 and April 19 the agents conducted surveillance of the defendant's activities, following her on four or five occasions as she traveled about the upper Broadway vicinity in her Oldsmobile. The agents saw her meet with a number of known narcotics addicts. Usually after talking to the addict she returned to her car and then went back to the addict on the sidewalk. Throughout this period the agents could observe no narcotics passing from the defendant to the addicts.

About 1:30 A.M. on April 25 agents Panella and Cockerill again followed the defendant as she drove slowly several times around one upper eastside block until she met and spoke with an unidentified male on one corner. Thereafter they observed the defendant drive slowly along Broadway between 72nd and 86th Streets several times and later enter two restaurants described in the testimony of one agent as "notorious hangouts for drug addicts."

About 4:30 A.M., as the defendant was about to drive into a gasoline station near her apartment, the agents arrested her, without a warrant. Agent Cockerill found a glassine package containing about one-half ounce of heroin in a fold in the convertible top of the car.

■■ This recital of the events preceding the defendant's arrest demonstrates that the agents had ample probable cause—apart from any information received from any informer—to believe that the defendant was at that time concealing and transporting narcotics in violation of law. 21 U.S.C. §§ 173–174. Under the authority granted them, 26 U.S.C. § 7607, they were empowered to make the arrest. Knowledge of the defendant's record of prior narcotics violations, observance of her repeated clandestine meetings with known addicts, and her conduct during the morning of April 25—taken together, these factors were more than sufficient to give the agents probable cause for the defendant's arrest. It was not necessary for the agents to secure an arrest warrant. In cases involving suspected narcotics violations, where evidence may easily and quickly be secreted or disposed of, the clear intendment of the statute was to grant agents broad discretion in determining the appropriate time for arrest. The 1956 report of the Subcommittee on Narcotics of the Committee on Ways and Means of the House of Representatives makes this clear: "Narcotic drugs are small in volume and high in price. A fortune in drugs can be concealed under clothing and can be destroyed or moved to a place of safety on a moment's notice. The delay involved in obtaining a warrant from a magistrate permits the destruction or the removal of the narcotic evidence and allows the narcotic traffickers to escape prosecution for their crime. These and other restrictions on enforcement officers

leave the public unprotected and give narcotic violators, especially the more reprehensible larger racketeers and wholesalers, an advantage over law-enforcement officers in efforts to combat the illicit narcotic traffic. The subcommittee urges that corrective measures in these areas be taken immediately to permit enforcement officers to operate more effectively." 1956 U.S.Code Cong. & Ad. News p. 3302. One consequence of this report was the enactment of the Narcotic Control Act of 1956, especially 26 U.S.C. § 7607, which provides that narcotics agents may make arrests without warrant where they have reasonable grounds to believe that the person to be arrested has committed or is committing a violation of the narcotics laws.

The defendant attempts to make much of the fact that the agents consulted an Assistant United States Attorney on April 19. We cannot see how this is material on the question whether probable cause existed six days later on April 25. We find it highly commendable that two branches of federal law enforcement, both charged with the task of assuring the proper administration of criminal justice, should join in effectuating that purpose. In any event, so long as the action finally taken by the agents was supported by probable cause at the time of the arrest, what may have transpired between the agents and their legal adviser is totally immaterial.

In these circumstances the government was not obliged to disclose the identity of the informer whose information first led to examination of the defendant's activities. Where information received from an informer is essential to the establishment of probable cause the informer's identity must be disclosed. United States v. Robinson, 325 F.2d 391 (2 Cir. 1963). However, here the narcotics agents used the information merely as a starting point, proceeding from there to a search of police records and a course of surveillance which developed enough information—as to which they themselves could testify—to establish probable cause for the arrest. Since probable cause was thus established quite apart from the informer's statement that the defendant was selling narcotics, there was no reason to require the government to disclose the identity of the informer.

The judgment of the district court is accordingly affirmed.