**Charles Frederick ROCHA, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21111.**

United States Court of Appeals
Ninth Circuit.

Dec. 12, 1967.

Rehearing Denied Jan. 18, 1968.

Edward L. Cragen (argued), San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty. (argued), San Francisco, Cal., for appellee.

Before POPE, HAMLEY and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge:

Charles Frederick Rocha appeals from his conviction on a charge of concealing and facilitating the concealment of heroin in violation of the Narcotic Drugs Import and Export Act, 35 Stat. 614 (1909) as amended, 21 U.S.C. § 174 (1964).

Rocha's only point on appeal is that the trial court should have granted his pretrial motion to suppress certain evidence and therefore erred in admitting the evidence at the trial. The evidence in question consists of 57.585 grams of heroin which was found at Rocha's service station as a result of a search made immediately after his arrest at the service station on September 23, 1965.

Rocha made a pretrial motion to suppress the evidence. Three grounds for such relief were asserted, namely: (1) the evidence was seized under color of a search warrant issued by a California state magistrate, and the state warrant is illegal under California law because the supporting affidavit is inadequate; (2) the issuing state magistrate having granted a motion to suppress the evidence on the ground that the affidavit supporting the warrant is inadequate, it was unlawful for state officers to

thereafter turn over the evidence to federal officers and it was improper for federal officers to receive the same; and (3) the affidavit supporting the search warrant is insufficient under federal law.

A hearing was had on the pretrial motion to suppress, and the motion was denied. The court held that the affidavit was sufficient and, furthermore, the arrest was based on probable cause and the search incident thereto. The motion to suppress was renewed during the trial and again denied. The evidence was thereafter admitted over Rocha's objection.

On this appeal Rocha asks us to limit our review of the testimony bearing on the search and seizure to that which was received during the hearing on the pretrial motion. The Government, on the other hand, invites us to also consider all evidence received at the trial which is relevant to the search and seizure question.

█ In determining whether a district court erred in admitting evidence claimed to have been seized as the result of an unreasonable search, an appellate court will not ordinarily limit itself to the testimony received at a pretrial motion to suppress, but will also consider pertinent testimony given at the trial. See Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543; Rent v. United States, 5 Cir., 209 F.2d 893.

In this case, however, when the motion to suppress was renewed during the trial, the trial court inquired whether the parties desired to submit additional evidence as to the reasonableness of the search. Upon being advised that no additional testimony was to be offered, the court suggested that, in deciding the renewed motion to suppress, only the transcript of the pretrial motion be considered. Both counsel agreed to this procedure. Later in the trial, when the seized article was offered in evidence, counsel for Rocha objected on the grounds stated in his prior motion to suppress. As before stated, the objection was overruled.

█ Under these special circumstances, and without deciding whether we are required to do so, we will confine ourselves to the facts as revealed by the record on the pretrial motion to suppress.

At the pretrial hearing only one witness was called, Sergeant Stanley E. Shaver of the Santa Clara County Sheriff's Department. His testimony revealed that in November, 1965, his office, along with the Federal Bureau of Narcotics and the city police, was engaged in the investigation of narcotics traffic in the Santa Clara area. A federal undercover agent, Rustam Aruslan, had penetrated a small narcotics ring and, between November 16 and November 23, 1965, had made three purchases of heroin through one Frank B. Ram.

In an attempt to reach Ram's source of supply, a listening device was placed on the undercover agent. Through this means Sergeant Shaver and another federal agent were able to overhear Ram tell the undercover agent that his source of supply was of Mexican descent, operated a service station in the city of Santa Clara, and kept narcotics in the service station's safe. On the three occasions when the undercover agent gave Ram money to purchase heroin from his source, a surveillance team of federal and state agents followed Ram and his girl friend, Lavina Medina, to a service station owned by the defendant Rocha. On each occasion the middleman, Ram, later returned to the undercover agent with the requested heroin.

On the last of the three purchases, Ram and Miss Medina were arrested by the federal agent, Aruslan, when they returned with the heroin. Under questioning by federal and state officers, both named Rocha as their source of supply. Ram voluntarily agreed to telephone Rocha at the service station to ascertain if Rocha had more narcotics in his safe. Sergeant Shaver testified that federal officers monitored the conversation and someone answering as "Fred" stated that he had only "a couple of pieces or two left." At the same time an agent

watching Rocha's service station reported that Rocha answered the telephone.

After the conversation a state police officer was sent to a local magistrate to get a search warrant. When he returned with the search warrant, federal and local officers proceeded to the service station. In the immediate presence of federal officers, Sergeant Shaver placed Rocha under arrest, and then handed him the search warrant. Shaver searched the safe, found the heroin, and while still at the gasoline station, gave it to a federal agent assisting in the arrest.

Two months later defendant Rocha succeeded in having this evidence suppressed by the local magistrate who originally issued the warrant. Apparently this was done on the ground that the affidavit supporting the search warrant was insufficient. The motion was granted, however, "without prejudice to the People offering said evidence at any future hearing in this matter as being incident to a legal arrest."

On this appeal Rocha contends that the district court erred in holding that the affidavit on which the search warrant was issued was sufficient. Further, if the search warrant is held to be invalid, Rocha argues that the search cannot be justified as incident to a lawful arrest because, having elected to get a search warrant, the officers are barred from defending the search in any other manner.

■ Assuming that the search warrant was invalid because the supporting affidavit was insufficient, we hold that this does not preclude the Government from justifying the search as incident to a lawful arrest.

■ In Bell v. United States, 9 Cir., 371 F.2d 35, we refused to invalidate an arrest where, although the accompanying

arrest warrant was admittedly invalid, the arresting officers had probable cause to arrest the defendant without a warrant. The same reasoning is more compelling where, as here, the officers have probable cause to arrest without a warrant and, as an additional precaution, procure a search warrant. By so doing they have not "elected," as defendant asserts, to proceed on the basis of the search warrant alone. See United States v. Gearhart, 4 Cir., 326 F.2d 412.

Having concluded that the search may be upheld on alternate grounds, we now turn to the lawfulness of the arrest absent a valid warrant. Although Rocha was first arrested by Sergeant Shaver, a state officer, it is clear from Sergeant Shaver's testimony, read as a whole, that Rocha was also under federal arrest prior to the search. This was a joint federal-state enterprise throughout and the officers involved intended this to be a federal prosecution.[1] This interpretation of Shaver's testimony is further supported by the fact that, after seizing the evidence in question, he immediately handed it to the federal officer.

■■ The authority of the federal officers to arrest without a warrant must be determined by federal law unless that law is silent. Miller v. United States, 357 U.S. 301, 305, 78 S.Ct. 1190, 2 L.Ed.2d 1332; Williams v. United States, 9 Cir., 273 F.2d 781, 790. Here it is not. Under section 7607(2), added in 1956 to the Internal Revenue Code of 1954, 26 U.S.C. § 7607(2) (1964), agents of the Federal Bureau of Narcotics may arrest persons where the arresting officers have reasonable grounds to believe that the person arrested has committed or is committing a violation of the federal narcotic laws.[2]

---

[1]. On direct examination Sergeant Shaver stated that his department, the Federal Bureau of Narcotics, the San Jose Police Department and the Santa Clara Police Department were all involved in the investigation. Under questioning by the trial court, he stated that at the time the surveillance of Ram was undertaken this was going to be a federal case.

[2]. Section 7607(2), however, goes no further than the Fourth Amendment in permitting arrests without a warrant based on "probable cause." Draper v. United States, 358 U.S. 307, 310, 79 S.Ct. 329, 3 L.Ed.2d 327; Ng Pui Yu v. United States, 9 Cir., 352 F.2d 626, 630; Rodgers v. United States, 9 Cir., 267 F.2d 79, 84.

■ Here a federal undercover agent had given Ram money on three occasions to purchase heroin from his source. On each occasion Ram was eventually trailed to Rocha's service station. Further, Ram's description of his source, given at a time when he was unaware of the undercover agent's identity, further confirmed the officer's suspicion that Rocha's service station was the place where Ram picked up his heroin. And, finally, in admitting his own guilt, Ram implicated Rocha as the source of the heroin. His story was further verified when officers overheard the telephone conversation between Ram and Rocha.

In view of these facts and circumstances, known to the arresting officers through personal observation and reasonably trustworthy information, they had reasonable cause to believe that Rocha had been or was violating the federal narcotic laws. See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329; Sanchez v. United States, 9 Cir., 311 F.2d 327.[3]

■ Finally Rocha argues that the evidence should have been excluded under our power over the administration of criminal justice in the federal courts. Cf. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. Rocha's argument rests on the assumption that Sergeant Shaver's act of handing to federal officers the evidence which Shaver found in Rocha's safe violated Calif. Penal Code, §§ 1528 and 1536 (1957).[4]

Without expressing any view as to the merits of this argument had there been a violation of the above statutes, it is clear that in this instance there was no such violation. As we have held, there was, in effect, a dual state and federal arrest of Rocha prior to the seizure of the heroin. Moreover, even the state arresting officer was not confined to proceeding under the search warrant alone, as the state magistrate implicitly ruled when he held the state search warrant invalid.

Affirmed.

3. Our conclusion would be the same even if we were mistaken in holding that Rocha was arrested by federal agents, rather than state officers, prior to the search. Section 836, Calif.Penal Code (1957) permits arrest without a warrant by state officers where there is reasonable cause to believe the arrested person has committed a felony. Since this is a federal prosecution, the test in determining probable cause is one of federal law. Elkins v. United States, 364 U.S. 206, 223–224, 80 S.Ct. 1437, 4 L.Ed. 2d 1669.

4. Section 1528 provides:
"If the magistrate is thereupon satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence, he must issue a search warrant * * * to a peace officer in his county, commanding him forthwith to search the person or place named, for the property or things specified, and to retain such property or things in his custody subject to order of the court as provided by Section 1536."
Section 1536 provides:
"All property or things taken on a warrant must be retained by the officer in his custody, subject to the order of the court to which he is required to return the proceedings before him * * *."