**UNITED STATES of America,**

v.

**Gerald BLAIR, Defendant.**

**No. 73 Cr. 831–LFM.**

United States District Court,
S. D. New York.

Nov. 26, 1973.

Joel Winograd, New York City, for defendant.

Paul J. Curran, U. S. Atty. for the Southern District of New York, New York City, for United States of America; Bancroft Littlefield, Jr., Asst. U. S. Atty., of counsel.

## OPINION

MacMAHON, District Judge.

Defendant moves, pursuant to Rule 41(e), Fed.R.Crim.P., to suppress as evidence at trial 9,569.4 grams of hashish seized from him following a search without a warrant.

In the evening of March 20, 1973, at about 10:00 o'clock, defendant, carrying an attache case and a brown leather satchel, rang the buzzer of Apartment 8–C at 124 East 84th Street in Manhattan. The door was opened by two men who identified themselves as Agents Kobell and Sennett of the Drug Enforcement Administration. They told defendant to come in and, when he did, placed him against a wall and frisked him for weapons. Smelling a strong and distinctive odor of marijuana or hashish emanating from the attache case, the agents opened it and found four soles of hashish. They then told defendant to open the satchel and it contained 39 additional soles of hashish. Defendant was then arrested.

Defendant claims that the search of his articles was unlawful because (1) the searching agents had entered Apartment 8–C unlawfully and (2) assuming lawful entry, the search of his articles was nonetheless unlawful because it was made without a warrant and not as an incident to a lawful arrest. We turn, therefore, to a consideration of the facts relevant to these contentions.

It appears that following discussions with an informant, Agent Buceti asked him to arrange to buy a sample of cocaine from one Noel Nocks. The informant made the arrangements, and on the night of December 5, 1972 he accompanied Agent Buceti to an apartment house at 124 East 84th Street in Manhattan. When they arrived, the informant entered the building and went to Apartment 8–C where Nocks resided, but the agent remained outside in his car watching the apartment house entrance. While the informant was meeting with Nocks in Apartment 8–C, a man named "Steve" entered and sold and delivered a two-gram sample of cocaine to the informant for $25.00. The informant's description of "Steve" matched that of a man whom Agent Buceti had seen arrive in a car, get out and enter the apartment building at about the time of the transaction. Agent Buceti had noted the number of the license plate and a search of the motor vehicle records revealed that the car belonged to a Steven Bernstein.

After December 5, 1972, Agent Buceti negotiated for several months with Nocks for the purchase of ⅛ kilogram

of cocaine. During this period, the informant advised Buceti that he had seen Bernstein in Apartment 8–C on several occasions.

The negotiations for the purchase of ⅛ kilogram of cocaine were inconclusive, and when the agents became satisfied that they would prove to be fruitless they decided to arrest Nocks and Bernstein for the earlier sale of the sample of cocaine. Accordingly, on March 20, 1973, Buceti and other agents of the Drug Enforcement Administration went to 124 East 84th Street to make those arrests. While waiting outside, they saw Nocks arrive, accompanied by a man later identified as Arthur Epstein. As Nocks entered the vestibule of the apartment building, the agents handcuffed and arrested him for the prior sale of the sample of cocaine.

Agent White asked Nocks if Bernstein was in the apartment, and he replied that he was not.[1] The agents, Epstein and Nocks then took the elevator to the eighth floor to search Apartment 8–C for Bernstein. Epstein opened the door using keys which the agents had taken from Nocks' pocket. The agents entered and while unsuccessfully searching the apartment for Bernstein discovered two large plastic bags of marijuana, shotguns, gun powder, shotgun shells and a shotgun loading machine.[2] A more extensive search, which the government concedes was unlawful, yielded various other articles of contraband which the agents catalogued. At about 9:30 P.M., Bernstein, accompanied by a woman named Ellen Ferrante, entered the apartment and was arrested. About half an hour later, at 10:00 P.M., defendant Blair arrived on the scene, he was frisked,[3] his bags were searched and he was arrested as previously described.

There is no question that the agents had neither a search nor an arrest warrant when they entered Apartment 8–C. Defendant claims, therefore, that under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), any evidence obtained by their search of his bags is inadmissible as the fruit of an unlawful entry into the apartment.

While conceding that the search of defendant's bags was illegal if the agents were in Apartment 8–C unlawfully, the government, nevertheless, asserts that despite the agents' lack of a search or arrest warrant their entry was lawful under 21 U.S.C. § 878(3). That statute authorizes agents of the Drug Enforcement Administration to "make arrests without warrant . . . for any felony, cognizable under the laws of the United States, if . . . [they have] probable cause to believe that the person to be arrested has committed or is committing a felony."

There can be no question that the agents had probable cause to believe that Bernstein had committed the felony of distributing cocaine.[4] The informant had so reported to Agent Buceti, and his information had been corroborated by Buceti's observation of Bernstein entering the building at the time of the sale. The agents also had reason to believe, from the informant's information and Buceti's observations, that Bernstein resided in Apartment 8–C.

Defendant's challenge to the constitutionality of the statute, 21 U.S. C. § 878(3), is without merit. The statute, as was its predecessor, 26 U.S.C. § 7607, is of unquestioned validity for it does not expand the authority of federal officers to arrest with probable cause beyond the scope of the Fourth

---

1. There was testimony that Agent White asked Nocks if the agents could look in the apartment and Nocks replied: "You're welcome to look." The government does not claim that this statement constituted consent to search Apartment 8–C and does not rely upon consent to justify the agents' presence in the apartment.

2. The government will not seek to introduce any of this material into evidence against Blair, and he does not seek to suppress it.

3. We note in passing that this frisk was lawful under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

4. 21 U.S.C. § 841(a).

Amendment.[5] This circuit has held that an officer may enter a dwelling to make a warrantless arrest of a person whom he has probable cause to believe has committed a felony.[6] Here, the agents clearly had probable cause to believe that Bernstein had committed a felony and that he was living in Apartment 8–C. They were, therefore, entitled to enter that apartment to arrest him.[7]

The result is not altered by the fact that the agents had ample time (over three months) to obtain an arrest warrant. The statute, 21 U.S.C. § 878(3), authorizes a warrantless arrest regardless of whether the agents have sufficient time to obtain one.[8]

We find the agents' entry into, and subsequent presence in, Apartment 8–C to have been lawful and therefore reject defendant's *Wong Sun* argument.

We turn now to the validity of the agents' warrantless search of defendant's attache case and satchel.

The Fourth Amendment prohibits "unreasonable searches and seizures." A search without a warrant is *per se* unreasonable and invalid unless it was conducted as an incident to a lawful arrest or under "exigent circumstances" which necessitate a search without a warrant. The government concedes that defendant was arrested *after* his bags were searched and that therefore the search here cannot be justified as incident to a lawful arrest. The government claims, however, that the search was nevertheless reasonable and valid because of the existence of exigent circumstances necessitating an immediate warrantless search. The agents, the government argues, had no authority to detain defendant while they obtained a search warrant, and there was imminent danger that the defendant would remove and dispose of the contraband if he were not searched immediately.

The exigent circumstances exception applies and permits government agents to make warrantless searches where contraband is "threatened with imminent removal or destruction."[9] The exception is most often applied in cases involving automobiles because it is not practicable to secure a warrant when

5. Rocha v. United States, 387 F.2d 1019, 1022 n.2 (9th Cir. 1967). See, United States v. Jamison, 395 F.2d 716 (2d Cir. 1968); United States v. Santiago, 327 F.2d 573 (2d Cir. 1964); Williams v. United States, 334 F.Supp. 669 (S.D.N.Y.1971), aff'd, 463 F.2d 1183 (2d Cir. 1972).

6. United States v. Gonzalez, 483 F.2d 223, 224 n.2 (2d Cir. 1973); United States v. Mapp, 476 F.2d 67, 73–74 (2d Cir. 1973); Williams v. United States, *supra*, 463 F.2d at 1185; United States v. Titus, 445 F.2d 577, 578 (2d Cir.), cert. denied, 404 U.S. 957, 92 S.Ct. 323, 30 L.Ed.2d 274 (1971). See also, Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); Carroll v. United States, 267 U.S. 132, 156, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The Court of Appeals for the District of Columbia has established a contrary rule in Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970) (en banc). See also, Vance v. North Carolina, 432 F.2d 984, 990–991 (4th Cir. 1970).

7. This is not a case involving "a warrantless nighttime entry for the purpose of arresting a person in his bed," which the Supreme Court has twice warned presents "a grave constitutional question." Coolidge v. New Hampshire, 403 U.S. 443, 480, 91 S.Ct. 2022, 2045, 29 L.Ed.2d 564 (1971); Jones v. United States, 357 U.S. 493, 499–500, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). Here, the entry into the apartment was at 8:00 P.M. The Court, in *Coolidge*, made it clear that it was referring to "midnight entry," 403 U.S. at 477, 91 S.Ct. 2022, as being of questionable validity. Here, there was none of the surprise, shock and extreme invasion of privacy which might accompany rousing a suspect from his bed to make an arrest. United States v. Gonzalez, *supra*, 483 F.2d at 224 n.2; United States v. Mapp, *supra*, 476 F.2d 67.

8. United States v. Gonzalez, *supra*, 483 F.2d at 224 n.2; United States v. Jamison, *supra*, 395 F.2d at 717; Odom v. United States, 403 F.2d 45 (5th Cir. 1968); United States v. Hall, 348 F.2d 837 (2d Cir. 1965); Abramson v. United States, 326 F.2d 565 (5th Cir. 1964); United States v. St. Clair, 240 F.Supp. 338, 341 (S.D.N.Y.1965). See also, Carroll v. United States, *supra* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Trupiano v. United States, *supra*, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663.

9. Hernandez v. United States, 353 F.2d 624, 627 (9th Cir. 1965).

the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.[10] The doctrine is not limited to automobile cases, however, but is applicable whenever "seizure is impossible except without warrant." [11]

■■ The burden rests on the government to prove that exigent circumstances justified a warrantless search.[12] We feel that the government has met that burden. The agents had no grounds on which to hold defendant while they obtained a search warrant, and the two bags containing contraband could have been disposed of easily. The situation here is analogous to the automobile cases in that "opportunity to search . . . was fleeting." [13] If the agents could not search Blair when he entered the apartment and they smelled the strong odor of hashish or marijuana, they would never have had the opportunity to search him. This is precisely the situation contemplated by the Supreme Court in a recent case in which it said:

> "Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation." [14]

This case is also similar to cases upholding warrantless searches at airports because evidence or contraband was in imminent danger of being removed on an airplane.[15]

■ Although the circumstances call for action "now or never," an officer conducting a warrantless search must still act with probable cause. The agents "must have reasonable grounds to believe that the particular package carried by the citizen is contraband." [16]

Here, the agents smelled the very pungent and unmistakeable odor of hashish or marijuana as soon as Blair entered the apartment. The distinctive odor of the contraband was known to these trained and experienced agents.[17] Indeed, the odor was so distinctive and pungent that it was unmistakeable to the court despite the fact that the odor decreases as the hashish dries and six months had elapsed since seizure. Surely the odor, together with defendant's visit to so obvious a drug "plant," was sufficient to give the agents probable cause to believe the attache case and the satchel carried by defendant contained contraband.[18]

Therefore, we find that the search of defendant's articles was lawful and defendant's motion to suppress is accordingly denied in all respects.

The foregoing opinion constitutes this court's findings of fact.

So ordered.

---

10. Carroll v. United States, *supra*, 267 U.S. at 153, 45 S.Ct. 280.

11. *Id.* at 156, 45 S.Ct. at 286. Coolidge v. New Hampshire, n.7, *supra*, 403 U.S. at 458–464, 91 S.Ct. 2022; Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L. Ed.2d 419 (1970); United States v. Ventresca, 380 U.S. 102, 107 n.2, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Johnson v. United States, 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

12. United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951); McDonald v. United States, 335 U.S. 451, 454, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

13. United States v. Ellis, 461 F.2d 962, 966 (2d Cir. 1972). Accord, United States v. Carneglia, 468 F.2d 1084 (2d Cir. 1972).

14. Roaden v. Kentucky, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973).

15. Hernandez v. United States, *supra*, 353 F.2d at 627; United States v. Berger, 355 F.Supp. 919 (W.D.N.Y.1973); United States v. Marti, 321 F.Supp. 59 (E.D.N.Y.1970).

16. Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 172, 4 L.Ed.2d 134 (1959).

17. Agent Kobell testified that he had smelled hashish and marijuana on many occasions and that recognition of these substances was part of the training he and other agents received at the Bureau of Narcotics and Dangerous Drugs Training School.

18. Johnson v. United States, *supra*, 333 U.S. at 13, 68 S.Ct. 367; Hernandez v. United States, *supra*, 353 F.2d at 627. Defendant insists that the agents repeatedly answered the telephone in the apartment and invited the persons who called to "come to a party." No evidence was presented, however, which indicated that Blair's entry upon the scene was occasioned by such an "invitation."