**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Elbert RANSOM and Joe Pat DeMour, Defendants-Appellants.**

No. 74–3754.

United States Court of Appeals, Fifth Circuit.

July 9, 1975.

Rehearing and Rehearing En Banc Denied Sept. 25, 1975.

Joe Salem, Atlanta, Ga., for Ransom.

Joseph E. Wilkerson, Tucker, Ga., for DeMour.

John W. Stokes, U. S. Atty., Jerome J. Froelich, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and GEWIN and THORNBERRY, Circuit Judges.

GEWIN, Circuit Judge:

John Elbert Ransom and Joe Pat DeMour appeal from judgments of conviction for possession of an unregistered machine gun in violation of 26 U.S.C. § 5861(d) [1] and for violations of 18 U.S.C. App. § 1202(a)(1), which makes it unlawful for a convicted felon [2] to receive, possess, or transport a firearm in or affecting commerce. They raise several challenges to the convictions: probable cause for their arrest, the government's dilatory response to motions to suppress, the admissibility of a tape recorded conversation between an informant and Ransom, correctness of the jury charge on possession and on circumstantial evidence, sufficiency of the evidence, and the constitutionality of 18 U.S.C. App. § 1201 et seq. [3] We find no merit in any of these contentions and affirm.

In early December, 1972, a private detective named Dennis Key arranged a meeting between Cobb County (Georgia) police officers Brice and Mull, who were working undercover, and Sidney Cecil Puett concerning the purchase of a truckload of stolen televisions. Puett claimed that the police found the truck and the sale never took place. Then,

---

1. 26 U.S.C. § 5861(d) provides:

"It shall be unlawful for any person (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."

2. The indictment charges that Ransom was convicted of burglary, a felony, by the Superior Court of Cobb County (Georgia) on Decem-

ber 22, 1970. DeMour's felony conviction was in the Superior Court of Fulton County (Georgia) on May 8, 1968, and was for larceny.

3. 18 U.S.C. App. § 1201 et seq., enacted as Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, prohibits the receipt, possession, and transportation in or affecting commerce of firearms by various classes of persons and proscribes penalties for violations.

around December 27, Puett contacted Brice and offered to sell some 9,000 pills. This deal never materialized because officer Brice did not think that the place chosen for the transaction was secure. Several days later, Puett approached Brice, showed him some amphetamines, and offered to sell 1,000 pills for $450. After giving Puett $450 for the pills, officers Brice and Mull arrested Puett.

After being advised of his rights at the police station, Puett told Major William Padgett that John Ransom had provided him with the pills. Puett agreed to set up a meeting with Ransom, ostensibly so that he could pay Ransom his share of the profits and so that Ransom might restock Puett's inventory of pills. From Major Padgett's office at the police station, Puett called Ransom's home at about 11 p. m.; he spoke with Mrs. Ransom and left Major Padgett's private office number so that the unsuspecting Ransom might return the call. About a half hour later, Ransom called and Puett arranged to meet him at a telephone booth in a certain trailer park. These telephone conversations were recorded, and officer Brice and Major Padgett testified at the suppression hearing that Puett knew that the calls were being recorded and that he consented thereto and spoke freely and voluntarily.

At approximately midnight, officers Brice and Mull, accompanied by Puett, drove to the trailer park and parked beside the telephone booth. Shortly thereafter, a pickup truck drove up and Puett got out, went over to the truck, and spoke to its occupants. He then came back to the officers' car and told them that payment had been made. When the pickup truck in which Ransom was riding began to back out of the parking lot, a police car containing Major Padgett pulled up and blocked it. The occupants were ordered out of the truck; Ransom got out on the passenger's side and DeMour on the driver's side. Both Ransom and DeMour were searched and DeMour, who could produce no identification, was recognized by Major Padgett as being wanted by federal authorities for failing to turn himself in after his appeal was terminated. A pistol was found on Ransom, carried in a makeshift case tucked in the back of his trousers. A search of the truck's cab ensued after one of the arresting officers noticed the barrel of a rifle protruding from under the front seat. The rifle was an M–2 and beside it was a .32 Smith & Wesson pistol. A Browning automatic pistol was also found under the seat and a double barrel sawed-off shotgun was on the seat partially wrapped in a towel. The testimony supports the reasonable inference that at least one of the weapons was in plain view. Collidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Wysocki, 457 F.2d 1155 (5th Cir. 1972).

Appellants Ransom and DeMour moved to suppress evidence obtained from the arrest and search and seizure. They argued that there was not sufficient probable cause to arrest without a warrant and claimed that the subsequent search and seizure was unlawful. The district court, finding sufficient probable cause for the arrests, denied the motion to suppress and appellants contend on appeal that this was error. Considering Puett's arrest barely two hours earlier and his statements implicating Ransom, the monitoring of the calls between Ransom and Puett, and the appearance of Ransom and DeMour shortly afterwards at the trailer court parking lot, we think that there were ample grounds to believe Ransom and DeMour had been and were at that time committing violations of the Georgia narcotics law. Moreover, at the time of the arrest, Ransom and DeMour were leaving the scene. It would have been totally unreasonable to require the police officers to have obtained an arrest warrant in view of these circumstances. There was probable cause to arrest, and the search and seizure incident thereto did not violate the Fourth Amendment. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Terry v.

Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

█ The facts of United States v. Johnson, 456 F.2d 295 (5th Cir. 1972), are particularly analogous to the facts of this case. Langner was arrested when customs agents found thirty-one pounds of marijuana in his camper van. He implicated the Johnson brothers of San Antonio in a scheme to import the marijuana from Mexico. After Langner agreed to cooperate with the federal agents, he telephoned Kenneth Johnson and arranged to meet him and his brother at a hospital parking lot. The meeting took place as planned and, from the parking lot, Langner and the Johnson brothers proceeded to the Johnson home, followed by customs and narcotics agents. There the agents arrested Kenneth in the driveway. In a motion to suppress, Kenneth contended that the seizure of the marijuana and his warrantless arrest were without probable cause. This court disagreed and held that, in view of the circumstances, there was probable cause for the arrest. *See also* United States v. Doyle, 456 F.2d 1246 (5th Cir. 1972); Rocha v. United States, 387 F.2d 1019 (9th Cir. 1967); United States v. Santiago, 327 F.2d 573 (2d Cir. 1964). The motion to suppress was properly denied. We reject the contention of the appellants that probable cause for the arrest and search and seizure should be governed by state rather than federal standards. It is clear that federal constitutional standards are applicable. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). This conclusion should not be understood as the slightest intimation that a different result would be reached if Georgia law was applied.

█ Appellants further contend that the district court erred in failing to grant their motions for suppression and for dismissal of the indictment on the ground that the government failed to respond to these motions within the time allowed. The original indictment was returned on July 10, 1973; appellant Ransom moved to dismiss the indictment and suppress evidence on September 21, 1973. Upon its motion stating that its response would be delayed while it sought a superceding indictment, the government was granted an extension of time to January 15, 1974, in which to file its responses. No response was filed within that period. Again, on March 22, 1974, Ransom moved for dismissal of the indictment as well as an order of suppression. On April 3, 1974, the superceding indictment was returned. Both appellants then moved for dismissal of the indictment and suppression of the evidence. These motions were denied following an evidentiary hearing held on August 9. As we stated above, we find no error in the district court's denial of the motion to suppress. While we do not approve of the government's dilatory actions, we do not think that this situation demands the harsh remedy of dismissing the indictment. In the first place, appellants have shown no prejudice because of the delay. Furthermore, the government has offered a reasonable explanation: it was delayed in obtaining the superceding indictment by difficulties in locating Puett and determining whether he would testify for the government. *See generally* Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

█ Appellants Ransom and DeMour argue that transcripts of the recorded telephone conversation between Ransom and Puett were inadmissible in evidence at the suppression hearing because the police officers who recorded the conversation did not comply with applicable state and federal law. The contention of appellant DeMour can be dealt with summarily. DeMour lacks standing to contest the admissibility of the transcripts since he was not a party to the conversation and had no legitimate expectation of privacy either through participation in the conversation or through a possessory interest in the tapes. Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208

(1973); United States. v. Hunt, 505 F.2d 931 (5th Cir. 1974); United States v. Groner, 494 F.2d 499 (5th Cir. 1974). Ransom was a party to the conversation and has standing to challenge the admissibility of the transcripts. For several reasons, however, his challenge must fail. Under Georgia law, Georgia Crim.Code § 26–3006, there is nothing to prohibit the interception of a telephone message when (1) the message constitutes the commission of a crime or is directly in the furtherance of a crime and (2) one party to the conversation consents to the interception. There is no question that the Puett-Ransom conversation was intended to be in the furtherance of a crime, the sale of narcotics. At the suppression hearing, officer Brice testified that Puett consented to the interception and recording; Puett testified that he did not consent. Faced with this credibility choice, the district court concluded that Puett consented. This conclusion is supported by the evidence and it must stand. Ransom's argument that the interception was violative of federal wiretap law, namely Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., is completely without merit. There was ample evidence to support the conclusion that Puett consented to the interception, and 18 U.S.C. § 2511(2)(c) provides explicitly that it is not unlawful under the Act "for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." *See also* Ansley v. Stynchcombe, 480 F.2d 437 (5th Cir. 1973).

■■■ Additionally, Ransom asserts that the district judge erred in not acceding to Ransom's claims that a proper chain of custody for the tapes was never established. The trial judge at the suppression hearing did not require that the chain of custody be shown but admitted the transcript on the condition that the government show that it was verbatim and that Puett consented to the interception and recording. Mindful that the rules of evidence generally applicable in criminal trials do not always apply with the same force in suppression hearings before a judge, we find no error in the court's decision not to require proof of the chain of custody. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). We note that the district judge, after listening to the tapes, concluded that they were "in large part difficult, if not impossible, to understand" and were "of no benefit to either defendant, either as a substantive matter or for impeachment purposes." (App. at p. 712).

■■■ Appellant Ransom complains about the trial court's instructions regarding circumstantial evidence and joint or sole possession. On circumstantial evidence, the court's instructions read, in part:

Now, there are two types of evidence from which a jury may properly find a defendant guilty of a crime. One is direct evidence, such as the testimony of an eyewitness, and the other is circumstantial evidence or indirect evidence, that is, the proof of a chain of circumstances pointing to the commission of an offense. Now, as a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant, the jury be satisfied of the defendant's guilt, beyond a reasonable doubt, from all of the evidence in the case. (App. 681).

This instruction is correct and is substantially the same instruction on circumstantial evidence that we approved in United States v. Clark, 506 F.2d 416 (5th Cir. 1975). Ransom also claims that the charge on joint and sole possession was misleading and improper. The charge reads:

The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or

constructive possession of a thing, possession is joint. Now, you may find that the elements of possession, as that term is used in these instructions, is [sic] present if you find, beyond a reasonable doubt, that the defendants had actual or constructive possession, either alone or jointly. (App. 684).

Ransom's claim is altogether frivolous; we find nothing in the charge that is improper, incorrect, or misleading.

■ Appellants Ransom and DeMour claim that the evidence against them was insufficient to support the verdict of guilty. Both were charged in count one with possession of the unregistered M–2 rifle, in violation of 26 U.S.C. § 5861(d). Their claim is that there was not sufficient evidence to prove the element of possession. The facts show that Ransom was a passenger in a truck which DeMour drove to a post-midnight rendezvous in a trailer court parking lot with an alleged pusher-turned-informer. A double barrel sawed-off shotgun was on the front seat of the truck and the M–2 rifle barrel was sticking out from under the front seat. We think this evidence, when viewed in the light most favorable to the government, supports the jury verdict of guilty. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ Next, Ransom asserts that the evidence is insufficient to support a verdict of guilty as to the receipt and possession of the Browning automatic pistol in violation of 18 U.S.C. App. § 1202(a)(1), as charged in count two of the indictment. Once again, Ransom claims there is insufficient evidence to show possession. At trial, there was testimony that the pistol was shipped in interstate commerce from Arnold, Missouri, to a sporting goods store in Atlanta, Georgia, that the store sold the pistol to a Mr. Steven Lieb, and that Lieb in turn sold the pistol for $125 to Ransom who signed a bill of sale. Indeed, Ransom stipulated that the signature on the bill of sale was his. Taken together, this is sufficient to support the jury's implicit finding.

Appellant DeMour claims that there was no evidence to connect him with receipt of the Browning automatic as charged in count three and the Smith & Wesson revolver as charged in count four. He submits that the government's evidence tended to show that co-defendant Ransom received the Browning pistol but argues that there was nothing to show that he also received the pistol. Likewise, he claims there was nothing to connect him with the Smith & Wesson Revolver. 18 U.S.C. App. § 1202(a)(1) makes it unlawful for a convicted felon to receive, possess, or transport in commerce any firearm. There is ample evidence to support the conclusion that DeMour had, at least constructive possession of the pistols.

■ Appellant Ransom was sentenced to concurrent sentences of ten years on count one and two years on count two; DeMour received concurrent sentences of ten years on count one and two years each on counts three and four. As we have said, the evidence is sufficient to support the verdicts on each count. This is more than is necessary. Because the sentences are concurrent, they will all stand provided that the evidence supports the convictions under count one. The convictions under that count are clearly supported by sufficient evidence. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); United States v. Hale, 468 F.2d 435 (5th Cir. 1972).

■ Finally, appellant Ransom charges that 18 U.S.C. App. § 1201 et seq., making it a crime for convicted felons to receive, possess, or transport firearms in commerce, denies him equal protection because it does not apply to convicted felons who reside in the state in which the firearm is purchased. Ransom argues that the classification is unreasonable, arbitrary, and violative of due process. These arguments must fail. We think that the legislative classification applying to felons is rational and bears a substantial relation to the object sought to be attained, and we find no denial of equal protection or due process.

*See* United States v. Lupino, 480 F.2d 720 (8th Cir.), cert. denied, 414 U.S. 924, 94 S.Ct. 257, 38 L.Ed.2d 159 (1973); United States v. Burton, 475 F.2d 469 (8th Cir.), cert. denied, 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70 (1973).

We have considered all other alleged errors specified by appellants and find no merit in any of them. In all respects, the judgments of conviction of both appellants are affirmed.