**UNITED STATES of America,**
**Plaintiff,**

v.

**Lindberg HALL, Defendant.**

**Crim. No. 5–81525.**

United States District Court,
E. D. Michigan, S. D.

Feb. 5, 1976.

Ralph B. Guy, Jr., U. S. Atty., Steven W. Rhodes, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Jerrold B. Sherman, Southfield, Mich., for defendant.

## OPINION

RALPH M. FREEMAN, District Judge.

This matter is before the court on the motion of defendant Lindberg Hall to suppress evidence seized at the time of his arrest. The defendant, a convicted felon, is charged in a one-count indictment with unlawful possession of a firearm in violation of 18 U.S.C.App. § 1202(a)(1). An evidentiary hearing

was held on this matter at which time certain relevant facts were established.

While some facts are in dispute, the court finds the circumstances surrounding the arrest and search of the defendant as follows. In early April 1975, federal agents of the Drug Enforcement Administration, with the cooperation of the Detroit Police Department, initiated an extensive investigation of a suspected heroin distribution organization which was believed to be responsible for the distribution and sale of large quantities of heroin in the inner city area of Detroit, Michigan. Through information supplied by informants and surveillance work in the field, the federal agents were able to identify several of the leading members of this organization, including one Leroy Jackson, the reputed head of the organization. It was in the course of their investigative work that the agents first became familiar with the defendant in this case.

From a tip supplied by a proven reliable informant, the agents learned that defendant Hall was a salaried employee of Leroy Jackson and that his job was to transport quantities of heroin from the Tuller Hotel in Detroit to Bush's Garden of Eating, a restaurant in the vicinity that was thought to be utilized as a meeting place for alleged street dealers of the organization. This unnamed informant admitted that he was also a member of this organization. He told the agents that he had personally seen the defendant in possession of large quantities of heroin at the Tuller Hotel, and that the defendant would package the heroin in envelopes called "eights" and deliver them on a daily basis to dealers at the restaurant for eventual street distribution and sale. He also revealed that the defendant would use a female courier or "mule" to transport the drugs to the restaurant, where the modus operandi would be for the female courier to carry the drugs while accompanied by the defendant.[1]

Based on the information supplied by the informant, as well as their own corroborating observations, the federal agents initiated an immediate surveillance of the Tuller Hotel in order to observe the activities of defendant Hall. For this purpose, a team of DEA agents and officers of the Detroit Police Department was formed at the Tuller Hotel on the morning of May 22, 1975. This surveillance team was under the leadership of Special Agent Richard Coleman.

On that same morning, the surveillance agents observed Hall leave the Tuller Hotel with a Negro female who was carrying a brown paper bag. Hall and the female got into a green Oldsmobile and drove away from the scene. The pair were then followed to the Bush's Garden of Eating where Hall and his female companion were observed entering the restaurant. The female was observed carrying the same brown paper bag which she had in her possession at the time she left the hotel. The agents also observed several other suspected members of the heroin organization at the same restaurant.

Shortly thereafter, the agents observed the Negro female leave the restaurant without the brown paper bag. The defendant remained in the restaurant and surveillance of the female was discontinued. At approximately 11 A.M., the agents saw Hall and a number of the other suspected members of the organization leave the restaurant together and depart in several different directions. At that time, agent Coleman decided that no arrests would be effected because of the dislocation of the surveillance agents at the scene. Instead, the agents were instructed to continue the surveillance of each suspect seen leaving the restaurant.

In the process of attempting to continue surveillance of several suspects departing in different directions, the agents lost contact with Hall. Later

---

1. The informant further indicated that the defendant never associated with females except when he used them for purposes of transporting drugs.

that same afternoon, however, agent Coleman discovered that the green Oldsmobile that Hall had been driving was parked near the Tuller Hotel. On discovering this, agent Coleman immediately contacted other agents in the field and instructed them to return to the hotel and maintain their surveillance.

At approximately 5 P.M. of the same afternoon, the surveillance agents observed Hall and the same Negro female he had been with earlier that day leave the Tuller Hotel and drive away in the green Oldsmobile. At that time, Hall was observed wearing a white trench coat which revealed a bulge protruding from underneath the coat on Hall's right side.[2] The agents suspected that this bulge may have been a package that Hall was attempting to conceal from the public view.

Hall and his female companion were again followed, but this time they drove to the Foster Manor Hotel located within the immediate area. The agents observed Hall and the female enter the hotel. After only a short period of time, the two came out and attempted to return to the green Oldsmobile. Again, the agents observed the same bulge protruding underneath Hall's coat.

As Hall and the female approached the green Oldsmobile, Special Agent Coleman stopped them and effectuated the arrest of Hall. Hall was arrested without a warrant on the alleged basis of probable cause to believe that he had violated the narcotics law. At this point, Hall was searched and a .38 caliber Smith and Wesson revolver and some narcotics were seized from his person.[3] The suspicious bulge which had been observed by the agents was apparently caused by the revolver which had been discovered underneath Hall's coat.

It is the defendant's position that there was not sufficient probable cause to support an arrest for violation of the narcotics law and that any evidence seized incident to that arrest must, therefore, be suppressed. The defendant also contends that the agents should have first obtained a warrant prior to making an arrest.

It is the Government's position that the federal agents had sufficient probable cause to effect a warrantless arrest and search of the defendant. With respect to the authority to effect a warrantless arrest, the Government points to the fact that Congress has enacted a specific statute which authorizes agents of the Drug Enforcement Administration to make arrests without a warrant. The statute, 21 U.S.C. § 878, provides in pertinent part as follows:

> Any officer or employee of the Bureau of Narcotics and Dangerous Drugs designated by the Attorney General may—
>
> \* \* \* \* \* \*
>
> (3) make arrests without warrant . . .
>
> (B) for any felony, cognizable under the laws of the United States, if he has probable cause to believe that the person to be arrested has committed or is committing a felony . . .

 This statute, as was its predecessor, 26 U.S.C. § 7607, has been held to be of unquestionable constitutional validity because it merely codifies the authority of federal agents to make warrantless arrest otherwise permitted under the Fourth Amendment. *See Rocha v. United States,* 387 F.2d 1019, 1022 n. 9 (9th Cir. 1967); *United States v. Santiago,* 327 F.2d 573 (2d Cir. 1964); *United States v. Blair,* 366 F.Supp. 1036, 1038–9 (S.D.N.Y.1973). To justify a warrantless

---

**2.** The agents testified that it was very warm on that afternoon and that it seemed peculiar that the defendant was wearing a coat at that time.

**3.** The subject matter of this case only concerns the seizure of the revolver from the de-

fendant. The narcotics that were seized from the defendant are the subject matter of another case in another court.

arrest under the Fourth Amendment, the arresting officer must, at the time of the arrest, have probable cause to believe that an offense has been or is being committed. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The statute relied upon by the Government in this case does not require more nor does the Fourth Amendment permit less.

In *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 627 (1959), a case which is factually similar to the case at bar, the Supreme Court held that there was probable cause to support a warrantless arrest based upon information supplied by a reliable unnamed informant. With respect to probable cause, the Court quoted what had been said in *Brinegar v. United States, supra:*

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*See also, Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *United States v. Burch,* 471 F.2d 1314, 1316 (6th Cir. 1973). More specifically, the Court has stated that the existence of probable cause depends on:

> Whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

*Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

■ Applying the above standards to the case at bar, this court finds that the facts and circumstances leading to the arrest of the defendant provided more than sufficient probable cause to believe that he had committed and was continuing to commit a violation of the narcotics law at the time of his arrest. When the federal and state agents first observed Hall and his female companion leave the Tuller Hotel and drive to the Bush's Garden of Eating on the morning of May 22, 1975, there was sufficient probable cause to believe that Hall was transporting heroin and that heroin was in his possession in violation of 21 U.S.C. § 841(a)(1). At that time, the agents had within their knowledge the informant's tip that Hall was a member of the suspected heroin distribution organization and that he would be transporting heroin, in the company of a female, from the Tuller Hotel to that same restaurant. This information was corroborated by the arresting agent's observations of the defendant on that morning. All of the material details of the informant's tip, including the modus operandi that would be employed by the defendant in transporting the drugs, were confirmed by what the agents observed. The fact that Hall's female companion carried a brown paper bag from the hotel to the restaurant and that other suspected members of the organization were present at that same restaurant provided additional credence to what the agents already knew from the informant.

■ Moreover, the record in this case also reflects that information previously supplied by this same informant had been proven reliable by a prior arrest and by what was already known by the agents from their own investigative activities. This information was particularly trustworthy in light of the underlying circumstances by which the informant obtained this information as well as the fact that he was admitting participation in the very criminal scheme under investigation. *See United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Under these circumstances, the agents had justifiable cause to rely upon the informant's tip. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 321 L.Ed.2d 637 (1969).

■ Although Hall was not immediately arrested on the morning of May 22,

1975, there were exigent circumstances existing at that time that justified the resulting short delay in making an arrest. When the arresting agents observed Hall and a number of the other suspected members of the heroin organization leave Bush's restaurant together and depart in several different directions, the decision was made that no arrests would be made at that time because of the location of the surveillance agents at the scene. This decision was clearly justified under the circumstances that existed at that time. In determining when to effect an arrest, law enforcement officers must be given some flexibility in deciding when to take action on the basis of probable cause to believe that someone has committed an offense. *See United States v. Rabinowitz,* 339 U.S. 56, 65, 70 S.Ct. 430, 94 L.Ed. 653 (1949). Moreover, it was proper for the agents to continue their surveillance at that time in order to get some idea as to how far the defendant was willing to go in his criminal activities as well as to determine the possible participation of others involved in the suspected narcotic scheme under investigation. *See United States v. Sizer,* 292 F.2d 596, 599 (4th Cir. 1961).

In finding that there was a justification for a short delay in effecting an arrest in this case, the court also gives consideration to the nature of the offense that was involved. In cases of this nature, a considerable degree of discretion must be given to law enforcement agents in their efforts to combat the organized efforts of those involved in the traffic of drugs. What was said in *United States v. Clarke,* 224 F.Supp. 647, 661 (E.D.Pa.1963), applies with equal force to this case:

> The illicit traffic in narcotics, by its nature, is cancer-like in that it feeds on itself and infects everything it touches, spawning a multitude of other crimes. Once such a nefarious operation is suspected or discovered, it is the duty of Government Agents to ascertain fully the extent of any defendant's involvement, as well as to make sure that all concerned are apprehended. The necessity for a full and complete investigation was obvious and it was carried out in this case with complete propriety.

The court also finds that the arresting agents had sufficient probable cause to believe that the defendant was continuing to commit a violation of the narcotics law at the time of his arrest. When the arresting agents resumed their surveillance of the defendant later that same afternoon, they observed Hall and his female companion leave the Tuller Hotel and drive away in the green Oldsmobile to the Foster Manor Hotel. At that time, Hall was observed wearing a white trench coat which revealed a bulge protruding on Hall's right side. When Hall was arrested while attempting to leave the Foster Manor Hotel with his female companion, the arresting agents had sufficient probable cause to believe that he was going to make another delivery of heroin, and that heroin was presently in his possession.

The basis for probable cause consisted of the following facts and circumstances within the agents' knowledge at the time of the arrest: (1) the information that Hall would be transporting heroin from the Tuller Hotel; (2) the information derived from the agents' surveillance activities earlier that day which corroborated the informant's tip; (3) the fact that Hall was observed leaving the Tuller Hotel in the company of the same female he had been with earlier that day; (4) the fact that there was a suspicious bulge protruding underneath Hall's coat when he left the Tuller Hotel, and (5) the knowledge that Hall was involved in an ongoing criminal operation. These facts and circumstances would be sufficient, in "and" of themselves, to warrant a reasonably prudent person in believing that the defendant was committing an offense in violation of the narcotics laws at the time of his arrest.

The defendant, however, has contended that even if the agents had probable cause to make an arrest they should

have first obtained a warrant prior to making the arrest in this case. This contention is without merit. The record in this case clearly establishes that the investigative activities of the arresting agents continued up until the moment the defendant was arrested. Under these circumstances, it would be unreasonable to require law enforcement officers to obtain a warrant while they are in the midst of discovering ongoing criminal activity. Acquisition of a warrant takes time, and in cases of this nature, it is proper for Government agents to effect an arrest without a warrant so long as probable cause does in fact exist, as it did in this case. *United States v. Costello,* 381 F.2d 698, 701 (2d Cir. 1967); *United States v. Blair,* 366 F.Supp. 1036, 1039 (S.D.N.Y.1973); 21 U.S.C. § 878.

The court concludes that the arresting agents had probable cause to believe that defendant Hall had committed and was continuing to commit a violation of the narcotics law at the time of his arrest. The arrest being lawful, the search and seizure incident thereto was likewise lawful.

For the reasons set forth above, the motion to suppress evidence of defendant Hall is hereby denied.

An appropriate order shall be submitted.